# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

JAMES T. CONWAY,

       Petitioner,

   v.                         **Case No. 2:07-cv-947**
                                    **JUDGE ALGENON L. MARBLEY**
MARC HOUK, Warden,          **Magistrate Judge Norah McCann King**

       Respondent.

## OPINION AND ORDER

Petitioner, a prisoner sentenced to death by the State of Ohio, has pending before this Court a habeas corpus action under 28 U.S.C. § 2254. This matter is before the Court upon Respondent's motion to dismiss procedurally defaulted claims (Doc. # 25), Petitioner's memorandum in response (Doc. # 26), and Respondent's reply (Doc. # 27).

### I. Factual History

The Supreme Court of Ohio set forth the facts and procedural history of this case in *State v. Conway*, 108 Ohio St. 3d 214 (2006):

> On January 19, 2002, Jason Gervais was shot and killed and Mandel Williams was shot and wounded outside a strip bar in Columbus, Ohio. James T. Conway III was indicted, tried, and convicted by a jury of the aggravated murder of Gervais. He now appeals his convictions and sentence of death.
>
> Evidence at the trial revealed that on the evening of January 18, 2002, Conway met a group of friends at Dockside Dolls, a strip bar in Columbus, Ohio. Among the group was Conway's brother, Jeff Conway. Conway and his friends had visited Dockside Dolls ("Dockside") regularly during the previous month. The group was well known at Dockside, having spent large sums of money buying expensive bottles of champagne and giving generous tips to the dancers and staff.
>
> At closing time, approximately 2:30 a.m. on January 19, 2002, a fight erupted in the Dockside parking lot. Witness accounts varied. Some described the fight as a racial confrontation between a large group of white males

(Conway's group) and a smaller group of black males. Others did not believe that the fight was racially charged. The brawl lasted several minutes and involved between 25 and 40 people.

During the fighting, Mandel Williams, who was part of the group of black males, cut Conway's brother Jeff with a knife. Jeff told his brother that he had been cut and pointed out Williams as his attacker.

At this point, some witnesses heard someone say, "I'm going to get my gun." Conway and his friend, Rob Myers, went to a car parked just east of the club's entrance, from which Myers retrieved a .45-caliber semiautomatic handgun. Either Conway or Myers cleared a round from the gun and chambered a live round. When Conway took the gun from Myers, one witness heard Conway say, "I'll kill you guys."

Conway then moved fast through the parking lot toward Williams. When he was within 30 feet, Conway began shooting at Williams. According to some witnesses, after Conway began shooting, Williams and Jason Gervais, an innocent bystander, became entangled. Others testified that Williams had pulled Gervais into the line of fire in an effort to avoid being shot. In either event, Conway continued to shoot at both Williams and Gervais as he walked toward them. In the end, Conway emptied his weapon, firing a total of eight shots at the two. Conway was within eight feet of Williams and Gervais when he fired the last shots into them as they lay on the ground. After the shooting, Conway and the other members of his group, including his brother, fled the scene and went to Big Mike's Palace, an after-hours nightclub.

Gervais had been hit four times – once in his left lower back, once in his upper left leg, once in his right buttock, and once in his lower left leg – and died as a result of the bullet that entered his back, which penetrated his left lung. Williams had also been hit four times – once in his left shoulder, once in his left wrist, once in his left knee, and once in his right ankle – but survived.

Conway was indicted on three counts, including one count of aggravated murder. Count 1 charged that he purposely and with prior calculation and design caused the death of Gervais, R.C. 2903.01(A); Count 2 charged him with the attempted aggravated murder of Williams, R.C. 2923.02(A) and 2903.01(A); Count 3 charged him with having a weapon while under a disability, R.C. 2923.13.

The aggravated-murder count contained a death-penalty specification, charging aggravated murder as part of a course of conduct involving the purposeful killing or attempt to kill two or more persons. R.C. 2929.04(A)(5). Counts 1 and 2 also contained firearm specifications.

During the jury trial, the state called Ronald Trent as a witness. Trent was Conway's cellmate following Conway's arrest on February 23, 2002. After discovering that Trent was a distant cousin, Conway confided to Trent that he was the Dockside shooter. Conway told Trent that he had shot Williams for cutting his brother, Jeff. According to Trent, Conway was not concerned when Gervais had gotten in the way, because Conway had had a .45-caliber handgun and knew that the bullets would go through Gervais and hit Williams.

During their incarceration, Conway also attempted to involve Trent in a plot to kill Brian McWhorter, who had been with Conway at Dockside on the night of the shooting. Because Conway was concerned that McWhorter would testify against him, he offered Trent $30,000 to kill McWhorter and gave him $5,000 as an advance payment. In addition, Conway wanted Trent's help in a scheme to manufacture evidence by videotaping a person who resembled Conway confessing to the Dockside shooting.

The state called Mark J. Hardy, a firearms and ballistic expert with the Columbus Police Department. Hardy identified all spent shell casings and bullets and one live round recovered from the scene as .45-caliber ammunition. No weapon was recovered, but Hardy was able to establish that all spent bullets and casings had been fired from the same weapon.

**Defense Case**

At trial, the defense called Ron Edwards, a criminal investigator, and Conway's brother, Jeff Conway, also testified.

Edwards had photographed the crime scene and testified regarding what he believed to be bullet strikes on the side of the Dockside building where the shooting had occurred. Edwards testified that the bullet strikes were knee-high. On cross-examination, Edwards admitted that he did not know how long these marks had been on the building or whether they were even related to this shooting.

Jeff Conway testified that as he was leaving Dockside on the night of the shooting, a man named Corey started an argument with him, and they began to fight. The two had been on bad terms since high school. During the fight, one of Corey's friends grabbed Jeff and placed him in a headlock. Corey hit Jeff, and then Williams cut Jeff twice across the midsection. Jeff testified that he was "cut open pretty bad" and felt blood running down his stomach.

After Jeff was cut, he was scared and went to his brother in the parking lot, telling him he had been cut. Jeff then started walking to his car. Before he reached his car, he saw Williams coming at him again. Jeff testified that he had

seen that Williams had something in his hand.  Jeff testified, "I thought he was coming back to finish me off."  He pointed at Williams and yelled, "He's coming at me."  Jeff then heard gunshots and saw Williams jump back and pull Gervais in front of him, both falling to the ground.

On cross-examination, Jeff said that he had not seen who had shot Williams and Gervais.  Jeff insisted that he did not know whether his brother was the Dockside shooter and denied ever discussing the shooting with Conway.  Jeff could not explain why he did not report the knife attack to the police.

Conway testified that after the fighting in the parking lot had stopped, Jeff walked up to him and said he had been cut.  Jeff lifted his shirt, and Conway could see blood flowing from the wound.  Conway thought that Jeff was seriously injured and decided to walk Jeff to his car.  As they walked to Jeff's car, Conway stopped to talk with the owner of the bar about the fight.

Conway then heard Jeff screaming, "There's the guy; that's him."  Conway testified that he looked up and saw Williams charging down the sidewalk at Jeff.  Conway saw no weapon, but Williams was holding his hand down at his side, and Conway was sure that Williams still had a knife.  Conway testified, "When I seen him coming at my brother, I looked around and Rob's standing right beside me and he has a gun in his hand, so I just snatched it out of his hand and just started shooting at the ground, like trying to cut off where [Williams] was coming from."  Conway claimed that he had not been trying to kill Williams and so shot low, "like at his hip * * * to stop him from getting to [Jeff]."  Conway said he was pulling the trigger as fast as he could and did not pause between shots.  He claimed that he had had tunnel vision and had not seen Williams pull Gervais into the line of fire.  He said he did not realize that he had shot Gervais until he stopped shooting and both Williams and Gervais were lying on the ground.

Conway testified that when he saw Williams and Gervais on the ground, he was in shock, and his friends quickly pushed him into a car.  Conway's first thought was not to go to the police but to make sure Jeff was all right.  Conway left the scene with his friends and went to Big Mike's Palace because that was where Jeff had gone.

On cross-examination, Conway testified that he had never talked about the Dockside shooting with his brother.  Conway said he was mad that Jeff had been cut, but that his first concern was his brother and not going after Williams.  Conway denied retrieving the gun from the car and did not see Myers remove the gun from the trunk.  Conway described the gun as silver, with a gold Colt emblem on the handle.  Police seized an empty Colt gun box from his house, but Conway denied owning a Colt handgun.  Conway said he did not know what happened to

the gun after the shooting. He also could not explain why he fired eight shots and emptied his weapon if he was trying only to stop Williams and not kill him.

Conway initially denied telling Trent anything about the Dockside shooting, but later admitted discussing details about the Dockside shooting because Trent kept asking for information. Conway denied talking with Trent about killing McWhorter and also denied paying Trent $5,000. Conway also said that it was Trent's idea to make a video staging a false confession.

**Trial Result**

The jury convicted Conway of aggravated murder and of having a weapon while under a disability. The trial court mistakenly instructed the jury that the charge in Count 2 was attempted murder instead of attempted aggravated murder, as set forth in the indictment. As a result, the jury found Conway guilty of attempted murder in Count 2. (See discussion of proposition of law ten.) The jury also convicted Conway of the course-of-conduct death-penalty specification and the firearm specifications. After the penalty phase, the trial court sentenced Conway to death for the aggravated murder of Jason Gervais, consistent with the jury's recommendation. The trial court imposed a prison sentence of ten years for Conway's conviction for attempted murder, a three-year sentence for the firearm specification (the court merged the two specifications), and a 12-month sentence for having a weapon while under a disability, with all terms to be served consecutively.

Following sentencing, Conway filed a motion for a new trial. After an evidentiary hearing, the trial court denied the motion.

The matter is now before us on a direct appeal from the trial court.

*Conway*, 108 Ohio St. 3d at 214-18.

## II. State Court History

### A. Direct Appeal

Represented by attorneys Todd W. Barstow and David J. Graeff–Petitioner had been represented at trial by attorneys Robert W. Suhr and Brian J. Rigg–Petitioner appealed his conviction and death sentence directly to the Supreme Court of Ohio. In a merit brief filed on February 2, 2004, Petitioner raised the following propositions of law:

Proposition of Law One: The trial court abused its discretion in denying Appellant's request for an instruction on voluntary manslaughter and involuntary manslaughter, thereby denying Appellant his right to a fair trial and due process of law under the Fifth and Sixth Amendments to the United States Constitution and Article One, Section Ten of the Ohio Constitution.

Proposition of Law Two: The verdict of aggravated murder was not supported by sufficient evidence, thereby denying Appellant due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article One, Section Ten of the Ohio Constitution.

Proposition of Law Three: The trial court denied Appellant the right to a fair trial and due process of law as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article One, Section Ten of the Ohio Constitution by conducting critical stages of the trial outside the presence of Appellant.

Proposition of Law Four: Appellant's trial attorneys were ineffective in failing to object to inadmissible character evidence concerning the deceased, thereby depriving Appellant the right to fair trial, the effective assistance of counsel and due process of law as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article One, Section Ten of the Ohio Constitution.

Proposition of Law Five: A jury instruction that requires a life sentence recommendation be unanimous materially prejudices a capital defendant's right to a fair trial and to be free from deprivation of life without due process of law under the Fourteenth Amendment to the United States Constitution.

Proposition of Law Six: The trial court erred to the prejudice of the Defendant-Appellant by failing to properly swear in the jury.

Proposition of Law Seven: Multiple instances of deficient performance in the conduct of the penalty phase of a capital trial coupled with prejudice inuring to the detriment of the Appellant resulting in the denial of the right to a fair trial and the right to effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution.

A.      It is ineffective for counsel not to present relevant mitigation evidence.

B.      It is ineffective for trial counsel not to object to defective jury instructions.

<u>Proposition of Law Eight</u>: By using the word recommendation throughout the voir dire and penalty phase instructions, the trial court deprived Appellant of his right to a fair trial under the United States and Ohio Constitutions.

<u>Proposition of Law Nine</u>: Imposition of the death sentence violates the Sixth, Eighth and Fourteenth Amendments to the U.S. Constitution and Article One, Sections Two, Nine and Sixteen of the Ohio Constitution.

<u>Proposition of Law Ten</u>: When the indictment includes a count of attempted murder (not attempted aggravated murder), and the trial court charges on transferred intent, it is constitutionally impermissible for the accused to be found guilty of the element prior calculation and design, since it is not included in the offense of attempted murder that transfers, contra the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution.

<u>Proposition of Law Eleven</u>: When the jury is instructed on transferred intent regarding the aggravating circumstance, and the trial court finds the transferred intent applies to this specification, the conviction on the specification cannot stand since evidence shows a singular purpose, contra the Fifth, Sixth and Fourteenth Amendments to the Constitution.

<u>Proposition of Law Twelve</u>: When evidence is admitted that occurs after the trial court has ruled the witness is a government agent, prejudicial error occurs contra the Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution.

<u>Proposition of Law Thirteen</u>: Where testimony is presented that authorities worked with a government agent to elicit information incriminating remarks, including future conduct, from the accused, the result is a violation of the Sixth and Fourteenth Amendments to the Constitution.

<u>Proposition of Law Fourteen</u>: Constitutional error occurs at voir dire, where prospective jurors are not questioned regarding racial bias regarding an interracial crime, contra the Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution.

<u>Proposition of Law Fifteen</u>: A trial court commits prejudicial error in refusing a continuance at the outset of mitigation, when the record shows efforts at retaining fresh counsel, contra the Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution.

<u>Proposition of Law Sixteen</u>: The trial court commits constitutional error when it orders, on an overnight recess, the accused not to consult with his attorneys, contra the Sixth, Eighth and Fourteenth Amendments to the Constitution.

Proposition of Law Seventeen: Constitutional error occurs when the record reveals governmental intrusion on the right to a public trial under the Sixth and Fourteenth Amendments to the Constitution.

Proposition of Law Eighteen: Prejudicial error occurs when an assistant prosecutor, previously active in the case, testifies in the case in chief, contra the Sixth, Eighth and Fourteenth Amendments to the Constitution.

Proposition of Law Nineteen: Ineffective assistance of counsel occurs at the trial phase, where the record reveals counsel fell below the standard, and prejudice results, contra the Sixth, Eighth and Fourteenth Amendments to the Constitution.

Proposition of Law Twenty: The trial court commits prejudicial error in denying a motion for mistrial between the jury and mitigation phases of the trial, where the record reveals a juror had discussed sentencing with an alternate, contra the Sixth, Eighth and Fourteenth Amendments to the Constitution.

Proposition of Law Twenty-One: The trial court commits prejudicial error in denying the defense an expert witness on a computer simulation; and in restricting cross-examination of a primary prosecution witness, contra the Sixth, Eighth and Fourteenth Amendments to the Constitution.

(App. Vol. 6, at 27.)  On March 8, 2006, the Ohio Supreme Court issued a decision rejecting

Petitioner's propositions of law, affirming the judgment against him, and determining after

independent review of the aggravating circumstances and mitigating factors that his death

sentence was appropriate and proportional.

On October 2, 2006, the United States Supreme Court denied *certiorari*.  (App. Vol. 7, at

348.)

B.  Postconviction Proceedings Pursuant to Ohio Rev. Code Ann § 2953.21

Represented by the Ohio Public Defender's Office, Petitioner filed a postconviction

action in the trial court on April 2, 2004.  He raised the following grounds for relief:

First Ground for Relief: Petitioner Conway's convictions and sentences are void and/or voidable because he was denied his right to effective assistance of counsel and his right to expert assistance during his capital trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, § 10

of the Ohio Constitution, C.P. Sup. R. 20 (IV)(D), <u>Strickland v. Washington</u>, 466 U.S. 668 (1984); <u>Ake v. Oklahoma</u>, 470 U.S. 68 (1985). (Failure to obtain ballistics and firearms expert)

<u>Second Ground for Relief</u>: The sentence imposed against Petitioner Conway is void and/or voidable because defense counsel provided ineffective assistance at the penalty phase of Petitioner's capital trial and as a result, he was sentenced to death. (Failure to obtain cultural expert)

<u>Third Ground for Relief</u>: Petitioner Conway's convictions are void or voidable because he was denied the effective assistance of counsel at the trial phase of his capital trial as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and Article I, §§ 1, 2, 5, 9, 10, 16 and 20 of the Ohio Constitution. (Inability, due to prosecutorial misconduct, to prepare for testimony of jailhouse informant Ronald Trent)

<u>Fourth Ground for Relief</u>: Petitioner Conway's convictions are void or voidable because he was denied the effective assistance of counsel at the trial phase of his capital trial as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and Article I, §§ 1, 2, 5, 9, 10, 16 [and 20] of the Ohio Constitution. (Failure to prepare for the testimony of jailhouse informant Ronald Trent)

<u>Fifth Ground for Relief</u>: Petitioner [Conway]'s convictions and sentences are voidable because he was denied the effective assistance of counsel at the penalty phase of his capital trial as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and Article I, §§ 1, 2, 5, 9, 10, 16, and 20 of the Ohio Constitution and he was thereby prejudiced. (Failure to investigate, prepare, and present available mitigating evidence concerning Petitioner's character, family, and background)

<u>Sixth Ground for Relief</u>: The death sentence against Petitioner Conway is void and/or voidable because the death penalty as administered by lethal injection violates his constitutional right to protection from cruel and unusual punishment as guaranteed by the Eighth Amendment and to due process of law.

<u>Seventh Ground for Relief</u>: Petitioner Conway's convictions are void or voidable because he was denied the effective assistance of counsel at voir dire during the trial phase of his capital trial as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution and Article I, §§ 1, 2, 5, 9, 10, 16 and 20 of the Ohio Constitution. (Failure to peremptorily strike juror who indicated he would automatically impose death upon a finding that Petitioner was guilty of the charged crimes)

> Eighth Ground for Relief: Petitioner Conway's convictions and sentences are void and/or voidable because he was denied effective assistance of counsel during his capital trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, § 10 of the Ohio Constitution, C.P. Sup. R. 20 (IV)(D), Strickland v. Washington, 466 U.S. 668 (1984). (Failure to obtain optometry and/or ophthalmology expert)
>
> Ninth Ground for Relief: Petitioner Conway's convictions and sentences are void and/or voidable because he was denied effective assistance of counsel during his capital trial as guaranteed by the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution, C.P. Sup. R. 20 (IV)(D) were violated. (Failure to conduct reasonable investigation into State's witnesses)
>
> Tenth Ground for Relief: Petitioner Conway's judgment and sentence are void or voidable because Ohio's post-conviction procedures do not provide an adequate corrective process, in violation of the constitution.
>
> Eleventh Ground for Relief: Petitioner Conway's conviction and sentences are void or voidable because, assuming *arguendo* that this Court finds that none of the Grounds for Relief in this Post-Conviction Petition individually warrant the relief sought from this court, the cumulative effect of the errors and omissions as presented in the Petition in paragraphs one through eighty nine have been prejudicial to the Petitioner and have denied the Petitioner his rights as secured by the United States and Ohio Constitutions.

(App. Vol. 8, at 30.)

On April 7, 2004, Petitioner filed the first amendment to his postconviction action, withdrawing the eleventh ground for relief, adding three more grounds, and offering additional exhibits. (App. Vol. 8, at 390.) Petitioner added the following grounds for relief to his postconviction action:

> Eleventh Ground for Relief: Petitioner Conway's conviction and sentence are void and/or voidable because he was deprived of the effective assistance of counsel in violation of his rights as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and Section 10, Article I of the Ohio Constitution, C.P. Sup. R. 20 (IV)(D). (Failure to utilize videotape maintained by the Dockside Dolls club)

> Twelfth Ground for Relief: Petitioner Conway's convictions are void or voidable because he was denied the effective assistance of counsel at the trial phase of his capital trial as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and Sections 1, 2, 5, 9, 10, 16 and 20 of Article I of the Ohio Constitution. (Failure to present testimony of David Baker and Gary Hall)

> Thirteenth Ground for Relief: Petitioner Conway's conviction and sentences are void or voidable because, assuming *arguendo* that this Court finds that none of the Grounds for Relief in this Post-Conviction Petition individually warrant the relief sought from this court, the cumulative effect of the errors and omissions as presented in the Petition in paragraphs one through eighty nine have been prejudicial to the Petitioner and have denied the Petitioner his rights as secured by the United States and Ohio Constitutions.

On December 27, 2004, the trial court issued a decision and entry granting the State's motion to dismiss Petitioner's postconviction action. (App. Vol. 9, at 472.)

Petitioner appealed to the Tenth District Court of Appeals in Franklin County. In a brief filed on February 11, 2005, Petitioner challenged on multiple levels the trial court's rejection of his postconviction petition, challenged the trial court's refusal to permit discovery or conduct an evidentiary hearing, and re-argued most, but not all, of his grounds for relief. (App. Vol. 10, at 28.) On December 1, 2005, the court of appeals issued an opinion rejecting Petitioner's arguments and affirming the trial court's judgment denying Petitioner's postconviction action. (App. Vol. 10, at 401.)

Petitioner sought discretionary review from the Ohio Supreme Court, filing a memorandum in support of jurisdiction on January 9, 2006 that raised the same arguments Petitioner had presented to the court of appeals below. (App. Vol. 11, at 6.) On May 10, 2006, the Ohio Supreme Court issued a one-line entry summarily declining to exercise its discretionary jurisdiction over Petitioner's appeal. (App. Vol. 11, at 127.)

C.  Application for Reopening Pursuant to S. Ct. Prac. R. XI, Section 6

Represented by the Ohio Public Defender's Office, Petitioner filed on June 1, 2006 an application for reopening of his direct appeal, the procedure in Ohio for raising claims of ineffective assistance of appellate counsel.  (App. Vol. 7, at 323.)  Petitioner argued to the Ohio Supreme Court that his appellate attorneys performed deficiently and to his prejudice when they failed to raise the following propositions of law:

Proposition of Law No. 1: Where trial counsel's performance in the trial phase in a capital case falls below professional standards of reasonableness, counsel has rendered ineffective assistance, thereby prejudicing the defendant in violation of his constitutional rights.

1.      Failure to object to prejudicial questioning by State [of witness who referred to another murder for which Petitioner had been indicted, but not yet tried, and which was supposed to be kept from the jury].

2.      Failure to conduct hearing on substantive motion [to suppress evidence].

3.      Trial counsel were ineffective for failing to present testimony from the firearms expert.

4.      Conway's trial attorneys were ineffective in failing to properly present the computer simulation.

5.      Trial counsel rendered ineffective assistance of counsel by failing to excuse a death-prone juror during voir dire.

6.      Trial counsel were ineffective for failing to object to jury instruction [concerning the course-of-conduct specification].

Proposition of Law No. 2: Ohio Rev. Code Ann. § 2949.22(A)(1) mandating lethal injection as the means of execution in Ohio is unconstitutional.

Proposition of Law No. 3: Prosecutorial misconduct at Conway's trial rendered trial counsel ineffective.

The Ohio Supreme Court issued an entry on August 23, 2006 summarily denying Petitioner's application for reopening.

### III. Habeas Corpus Petition

Petitioner informally initiated these proceedings on January 29, 2007 by filing a motion for leave to proceed *in forma pauperis*, a notice of intent to file a habeas corpus petition, a motion to proceed *in forma pauperis*, and a motion for appointment of counsel. (Doc. # 1.) The Court issued a March 23, 2007 order granting those motions. (Doc. # 7.) These proceedings were formally initiated on October 2, 2007 when the habeas corpus petition (Doc. # 16) was filed raising the following claims for relief:

> **First Claim for Relief:** James Conway's convictions and sentences are constitutionally infirm. The trial court erred when it admitted Petitioner's statements to the informant which Petitioner made after he invoked his right to counsel. United States Constitution, Fifth, Sixth, Eighth and Fourteenth Amendments. (¶¶ 1-10.)

> **Second Claim for Relief:** Petitioner's convictions and sentences are constitutionally infirm because the jury was improperly sworn. Fifth, Sixth, Eight[h], and Fourteenth Amendments. (¶¶ 11-18.)

> **Third Claim for Relief:** Petitioner's convictions and sentences are constitutionally infirm because the trial court prosecutor violated his right to a public trial. Fifth, Sixth, Eighth and Fourteenth Amendments. (¶¶ 19-26.)

> **Fourth Claim for Relief:** Petitioner's convictions and sentences are constitutionally infirm because the trial court improperly curtailed the cross examination of the prosecution's informant. Fifth, Sixth, Eighth, and Fourteenth Amendments. (¶¶ 27-34.)

> **Fifth Claim for Relief:** Petitioner's convictions and sentences are constitutionally infirm because the trial court permitted a former member of the prosecutor's office to testify in the State's case in chief. Fifth, Sixth, Eighth, and Fourteenth Amendments. (¶¶ 35-41.)

> **Sixth Claim for Relief:** Petitioner's convictions and sentences are constitutionally infirm because the trial court precluded admission of the computer simulation. Fifth, Sixth, Eighth and Fourteenth Amendments. (¶¶ 42-47.)

**Seventh Claim for Relief:** Petitioner's convictions and sentences are constitutionally infirm because the trial court forbade Petitioner from speaking with his attorney during an overnight recess. Fifth, Sixth, Eighth, and Fourteenth Amendments. (¶¶ 48-56.)

**Eighth Claim for Relief:** Petitioner's convictions are constitutionally infirm because the trial court failed to afford him his right to be present for all critical stages of the proceedings. Fifth, Sixth, Eighth and [Four]teenth Amendments. (¶¶ 57-62.)

**Ninth Claim for Relief:** Petitioner's convictions and sentences are constitutionally infirm because the trial court refused to charge the jury on the lesser included offenses of manslaughter and involuntary manslaughter. Fifth, Sixth, Eighth and Fourteenth Amendments. (¶¶ 63-77.)

**Tenth Claim for Relief:** Petitioner's convictions are constitutionally infirm because there was insufficient evidence to support his conviction for aggravated murder. Fifth, Sixth, Eighth and Fourteenth Amendments. (¶¶ 78-88.)

**Eleventh Claim for Relief:** Petitioner's conviction for capital murder and his resulting death sentence is constitutionally infirm because the State failed to demonstrate by proof beyond a reasonable doubt that Petitioner was guilty of the single aggravating circumstance. Fifth, Sixth, Eighth and Fourteenth Amendments. (¶¶ 89-98.)

**Twelfth Claim for Relief:** Petitioner's death sentence is constitutionally infirm because it was returned by a jury which had been contaminated by an outside influence. Fifth, Sixth, Eighth and Fourteenth Amendments. (¶¶ 99-107.)

**Thirteenth Claim for Relief:** Petitioner's death sentence is constitutionally infirm because the trial court precluded Petitioner from retaining new counsel prior to the mitigation phase. Fifth, Sixth, Eighth and Fourteenth Amendments. (¶¶ 108-115.)

**Fourteenth Claim for Relief:** Petitioner's death sentence is constitutionally infirm because the trial court instructed the jury that it had to reach unanimity to return a life verdict. Eighth and Fourteenth Amendments. (¶¶ 116-120.)

**Fifteenth Claim for Relief:** Petitioner's convictions and sentences are constitutionally infirm because he was denied the right to effective assistance of counsel with respect to all stages of the proceedings in the trial court. Fifth, Sixth, Eighth and Fourteenth Amendments.

**A.**     Counsel failed to conduct a reasonable trial phase investigation.  (¶¶ 124-130.)

**B.**     Counsel failed to retain necessary experts for the trial phase.  (¶¶ 131-135.)

**C.**     Trial counsel conducted an unreasonable voir dire.  (¶¶ 136-141.)

**D.**     Defense counsel performed unreasonably in the trial phase presentation.  (¶¶ 142-146.)

**E.**     Defense counsel conducted an unreasonable mitigation investigation.  (¶¶ 147-149.)

**F.**     Defense counsel failed to retain necessary mitigation experts.  (¶ 150.)

**G.**     Defense counsel performed unreasonably in the mitigation phase.  (¶¶ 151-160.)

**H.**     Counsel's deficient performance prejudiced Petitioner.  (¶¶ 161-163.)

**<u>Sixteenth Claim for Relief:</u>** Petitioner's convictions and sentences are constitutionally infirm because he was deprived of effective assistance of counsel on his direct appeal of right.  Fifth, Sixth, Eighth and Fourteenth Amendments.  (¶164-171.)

[Appellate counsel were ineffective for failing to assign as error:]

Proposition of Law No. I: Trial counsel acts and omissions deprived Appellant of his right to effective assistance of counsel.  Sixth and Fourteenth Amendments.

A.     Defense counsel failed to object to the prejudicial questioning by State [referencing an unrelated capital murder charge that was supposed to be kept from the jury].

B.     Defense counsel failed to go forward on a motion to suppress.

C.     Defense counsel failed to present testimony from the firearms expert.

D.     Defense counsel failed to present testimony concerning the computer simulation.

E.     Defense counsel failed to excuse a death-prone juror during voir dire.

F.      [petition does not contain a sub-part F]

G.      Defense counsel failed to object to infirm instruction [concerning the course-of-conduct specification].

Proposition of Law No. II: The prosecutor's failure to provide complete discovery pursuant to Ohio Crim. R. 16 deprived Appellant of due process. Fifth, Sixth, and Fourteenth Amendments.

**<u>Seventeenth Claim for Relief:</u>** Petitioner's sentence is constitutionally infirm because Ohio's capital punishment system operates in an arbitrary and capricious manner. United States Constitution, Fifth, Sixth, Eighth and Fourteenth Amendments. (¶¶ 172-193.)

**<u>Eighteenth Claim for Relief:</u>** Petitioner's convictions and death sentences are invalid under the federal constitutional guarantees of due process, equal protection, the effective assistance of counsel, a fair tribunal, an impartial jury, and a reliable sentence due to the cumulative errors in the admission of evidence and instructions, gross misconduct by State officials and witnesses, and the systematic deprivation of his right to the effective assistance of counsel. United States Constitution, Fifth, Sixth, Eighth and Fourteenth Amendments. (¶¶ 194-196.)

(Doc. # 16.)

## IV. Procedural Default Discussion

This matter is before the Court upon respondent's motion to dismiss procedurally defaulted claims. (Doc. # 25.) It does not appear that every claim petitioner has raised in his habeas corpus petition was presented to the Ohio courts either during the direct appeal or on collateral review. As a general matter, a defendant who is convicted in Ohio of a criminal offense has available to him more than one method of challenging that conviction. Claims appearing on the face of the record must be raised on direct appeal, or they will be waived under Ohio's doctrine of *res judicata*. *State v. Perry*, 10 Ohio St. 2d 175 (1967). Issues that must be raised in a postconviction action pursuant to R.C. §2953.21 include claims that do not appear on the face of the record and claims of ineffective assistance of trial counsel where the defendant

was represented on direct appeal by the same attorney who represented him at trial. *State v. Cole*, 2 Ohio St. 3d 112 (1982). In 1992, a third procedure of review emerged. Claims of ineffective assistance of appellate counsel must be presented to the appellate court in a motion for delayed reconsideration pursuant to *State v. Murnahan*, 63 Ohio St. 3d 60 (1992) and Ohio R. App. P. 26(B).

In addition to raising each claim in the appropriate forum, a habeas litigant, in order to preserve his constitutional claims for habeas review, must present those claims to the state's highest court. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999). Thus, the judgment of conviction on direct appeal, and any adverse decision rendered by the trial court in postconviction, must be appealed to both the Ohio Court of Appeals and the Supreme Court of Ohio. Likewise, any adverse decision rendered by the Ohio Court of Appeals on a motion for delayed reconsideration must be timely appealed to the Supreme Court of Ohio.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. §2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present his claims, then his petition is subject to dismissal, or stay and abeyance, for failure to exhaust state remedies. *Id*.; *Rhines v. Weber*, 544 U.S. 269 (2005); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). But if, because of a procedural default, the petitioner can no longer present his claims to the state courts, then he has also waived those claims for purposes of federal habeas corpus review, unless he can demonstrate both cause for the procedural default,

as well as actual prejudice from the alleged constitutional error. *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  "First, the court must decide that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule."  *Id*.  Second, the Court must determine whether the state courts actually enforced the state procedural sanction.  *Id*.  Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim.  *Id*.  Finally, if the Court has determined that a state procedural rule was not complied with, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error.  *Id*.  This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level.  *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

Respondent alleges in his motion to dismiss that several of petitioner's claims, in their entirety or in part, are subject to procedural default.  Respondent urges this Court to dismiss claims two, three, four, five, six, eight, nine, ten, eleven, twelve, thirteen, fourteen, fifteen, and seventeen.  The Court will address each of the claims individually to determine whether those claims are subject to the procedural defaults that Respondent alleges.

**A.** <u>**Second Claim for Relief**</u>**: Petitioner's convictions and sentences are constitutionally infirm because the jury was improperly sworn.**

Petitioner argues in his second claim for relief that the jury in his case was not duly constituted because on January 10, 2003, the trial court's bailiff, as opposed to the trial judge or clerk, administered the oath to the jurors. Petitioner argues that the verdicts rendered by that jury did not pass constitutional muster and that the Ohio Supreme Court erred by failing to address the issue as a structural error. Petitioner argues in the alternative that he suffered substantial and injurious prejudice because his jury was not obligated to follow the law. (Doc. # 16, at ¶¶ 11-18.)

Respondent argues that Petitioner's claim is subject to two defaults. First, Respondent argues that Petitioner defaulted this claim by failing to preserve it at trial in violation of Ohio's contemporaneous objection rule. (Doc. # 25, at 2.) Respondent also argues that Petitioner waived this claim by failing to fairly present it to the state courts as a violation of the federal constitution. Finally, Respondent goes beyond procedural default, arguing that Petitioner's claim is not cognizable in federal habeas corpus because it involves only state law.

Petitioner offers several arguments in response. (Doc. # 26, at 6.) With respect to Respondent's argument that he failed to fairly present his claim as a federal constitutional violation, Petitioner asserts that the Ohio Supreme Court addressed the issue as both a federal constitutional claim and a state law claim, thereby rendering the claim "a constitutional issue for purposes of this Court's review." (*Id.*) As to Respondent's argument that Petitioner failed to preserve the claim at trial with a contemporaneous objection, Petitioner appears to concede that his claim is subject to that procedural default by arguing that, "[i]f Petitioner can demonstrate cause and prejudice, the Court can still address the merits of this claim." (*Id.*) Asserting that

demonstrating cause and prejudice will require Petitioner to address the merits of his claim, Petitioner then urges the Court to hold in abeyance its procedural default ruling on his claim until after Petitioner submits his merits brief.

In his reply, Respondent bolsters his fair presentment argument by disputing Petitioner's assertion that the Ohio Supreme Court addressed this claim as a federal constitutional claim. (Doc. # 27, at 7.) According to Respondent, the Ohio Supreme Court determined that Petitioner failed to preserve the claim for relief and that Petitioner's claim was entitled to only plain error review. Respondent argues that the Ohio Supreme Court determined that Petitioner suffered no prejudice and that the Ohio Supreme Court relied on no federal law in making that determination. Respondent also argues that the Ohio Supreme Court rejected Petitioner's assertion that structural error analysis applied, determining that the error alleged involved a statutory violation rather than a constitutional violation. As to Petitioner's argument urging the Court to hold in abeyance any determination whether Petitioner can demonstrate cause and prejudice sufficient to excuse Petitioner's failure to preserve the claim in violation of Ohio's contemporaneous objection rule, Respondent argues that it is not necessary to evaluate the merits of a claim in order to determine whether it is procedurally defaulted and that Petitioner had an opportunity to make any cause and prejudice arguments. (Doc. # 27, at 6-7 (citing *Scott v. Mitchell*, 209 F.3d 854, 872 (6th Cir. 2000)).)

**1. Fair Presentment.**

The Court turns first to the issue of whether Petitioner fairly presented this claim to the state courts as a federal constitutional claim. In order to satisfy the exhaustion requirement in habeas corpus, a petitioner must fairly present the substance of his constitutional claim to the

state courts as a federal constitutional claim. *Anderson v. Harless*, 459 U.S. 4, 6, (1982); *Picard v. Connor*, 404 U.S. 270, 275 (1971). Although the fair presentment requirement is a rule of comity, not jurisdiction, *see Castille v. Peoples*, 489 U.S. 346, 349 (1989); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999), it is rooted in principles of comity and federalism designed to allow state courts the opportunity to correct the State's alleged violation of a federal constitutional right that threatens to invalidate a state criminal judgment. In the Sixth Circuit, a Petitioner can satisfy the fair presentment claim in one of four manners: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Further, general allegations of the denial of constitutional rights, such as the rights to a fair trial or due process, are insufficient to satisfy the "fair presentment" requirement. *Id*.

In the instant case, Petitioner presented this claim on direct appeal to the Ohio Supreme Court as his sixth proposition of law. Petitioner styled the heading as follows: "The trial court erred to the prejudice of the defendant-appellant by failing to properly swear in the jury." (App. Vol. 6, at 81.) This heading contained no discussion of or reference to a federal constitutional right, was not phrased in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right, and did not allege facts within the mainstream of constitutional law. In the body of his argument (App. Vol. 6, at 82-83), Petitioner set forth as the foundation for his claimed error the trial court's violation of a state statute, to wit: Ohio Rev. Code Ann. § 2945.28. Petitioner cited for support a state appellate court decision that concerned

the improper administration of oaths to witnesses in violation of state evidentiary rules. Again,

Petitioner's argument contained no discussion of or reference to a federal constitutional right,

was not phrased in terms of constitutional law or in terms sufficiently particular to allege a denial

of a specific constitutional right, and did not allege facts within the mainstream of constitutional

law. Petitioner did include in the body of his argument an assertion that the trial court's error

was structural rather than harmless. But beyond a general citation to *Arizona v. Fulminante*, 499

U.S. 279, 309-10 (1991), for the Supreme Court's definition of "structural error," Petitioner cited

no federal cases or constitutional provisions. The Court concludes that Petitioner did not fairly

present this claim as a federal constitutional claim, and Petitioner does not appear to argue

otherwise.

Rather, Petitioner appears to argue that the Ohio Supreme Court's discussion of his claim

in federal constitutional terms essentially rendered his claim fairly presented. Petitioner's

argument finds no support in the record or the law. First, review of the Ohio Supreme Court's

decision reveals that the court did not construe or discuss Petitioner's claim as a federal

constitutional violation. The Ohio Supreme Court rejected Petitioner's claim as follows:

> In his sixth proposition of law, Conway maintains that the trial court's
> having the bailiff, rather than the clerk of the common pleas court, administer the
> oath to the jurors, as R.C. 2945.28 directs, was prejudicial. R.C. 2945.28
> provides, "In criminal cases jurors and the jury shall take the following oath to be
> administered by the trial court or the clerk of the court of common pleas * * * ."
>
> After the jury was selected, the trial judge directed his bailiff to administer
> the oath to the members of the jury and the alternate jurors. Conway, however,
> did not object to the bailiff's administering of the oath and has waived all but
> plain error. See Crim.R. 52(B); *State v. Barnes*, 94 Ohio St.3d 21, at 27, 2002
> Ohio 68, 759 N.E.2d 1240. Conway presented no evidence demonstrating that he
> was prejudiced by the failure of the trial court or clerk to administer the oath.
> Without a showing of prejudice, the trial court's failure to strictly comply with
> R.C. 2945.28 does not require reversal of the jury's verdict. See, e.g., *State v.*

> *Boykin*, Montgomery App. No. 19896, 2004 Ohio 1701, 2004 WL 690799, at
> P159-166; *State v. Vanblarcome*, Franklin App. No. 02AP-417, 2003 Ohio 579,
> 2003 WL 257408, at P6-22.  See, also, *State v. Glaros* (1960), 170 Ohio St. 471,
> 11 O.O.2d 215, 166 N.E.2d 379.
>
> Conway's contention that the trial court committed structural error in this
> regard is equally without merit.  The "trial-error/structural-error distinction is
> irrelevant unless it is first established that *constitutional* error has occurred."
> (Emphasis sic.)  *State v. Esparza* (1996), 74 Ohio St.3d 660, 662, 1996 Ohio 233,
> 660 N.E.2d 1194.  See, also, *State v. Perry*, 101 Ohio St.3d 118, 2004 Ohio 297,
> 802 N.E.2d 643, at P23 (cautioning against applying a structural-error analysis in
> a plain-error situation).  Any error here was, at most, a statutory violation and not
> a constitutional error.  Thus, we overrule Conway's sixth proposition of law.

(*Conway*, 108 Ohio St. 3d at 223; App. Vol. 7, at 276.)  This discussion contained no reference

to a federal constitutional right, was not phrased in terms of constitutional law or in terms

sufficiently particular to allege a denial of a specific constitutional right, and did not allege facts

within the mainstream of constitutional law.

Further, in addressing Petitioner's argument that the claimed error was structural, the

Ohio Supreme Court expressly rejected any contention that the claimed error was constitutional.

Petitioner will not be heard to argue that the Ohio Supreme Court's reference to "constitutional

error" for the express purpose of rejecting any contention that the claimed error was

"constitutional error" somehow renders his claim "a constitutional issue for purposes of this

Court's review."  (Doc. # 26, at 6.)  *Cf. Williams v. Anderson*, 460 F.3d 789, 807 (6th Cir. 2006)

(finding no fair presentment from the Ohio Supreme Court's citation to a United States Supreme

Court decision where the decision was cited only for the proposition that evidentiary errors are

not reversible if harmless).  For the foregoing reasons, the Court agrees with Respondent that

Petitioner failed to fairly present his second claim for relief as a federal constitutional claim.

### 2. Contemporaneous Objection Rule.

Although the Court's determination that Petitioner failed to satisfy the fair presentment requirement would be sufficient to dispose of Petitioner's second claim for relief and grant Respondent's motion to dismiss the claim, the Court will, out of an abundance of caution, address Respondent's argument that Petitioner also defaulted the claim by failing to preserve it at trial in violation of Ohio's contemporaneous objection rule. The first part of the *Maupin* test requires the Court to determine whether a state procedural rule applies to petitioner's claim, and, if so, whether petitioner violated that rule. Under Ohio's contemporaneous objection rule, the failure to object to the trial error, including errors alleging irregularities in the administration of the oath to jurors, waives all but plain error on appeal. *State v. Dean*, No. 02CA06, 2003 WL 548519, at * 4 (Ohio App. 5 Dist. Feb. 25, 2003); *cf. State v. Glaros*, 170 Ohio St. 471, 480 (1960); *State v. Agner*, 30 Ohio App. 2d 96, 100-01 (Ohio App. 3 Dist. 1972). An alleged error "does not constitute plain error or defect under Crim.R. 52(B) unless, but for the error, the outcome of the trial clearly would have been otherwise." *State v. Long*, 53 Ohio St. 2d 91, paragraph two of the syllabus (1978). A review of the transcript confirms that Petitioner failed to object when the bailiff administered the oath to the jurors, in violation of Ohio's contemporaneous objection rule, and Petitioner does not appear to argue otherwise.

Under the second part of the *Maupin* test, violation of a state procedural rule will not preclude habeas corpus review unless the state courts actually enforced the procedural rule. *Harris v. Reed*, 489 U.S. 255, 261-62 (1989). In order to determine whether the state courts clearly and expressly relied on a state procedural default, this Court must look to the last state court disposition providing reasons for its decision. *See McBee v. Abramajtys*, 929 F.2d 264,

267 (6th Cir. 1991). In *McBee*, it appears that the state appeals court expressly applied the procedural default rule, and proceeded to only a limited review of the merits in order to determine whether the fundamental miscarriage of justice exception was applicable. *Id*. at 266. The Sixth Circuit enforced the state court procedural default, holding that the state courts had clearly and expressly relied upon two alternative grounds, procedural default or substantive lack of merit, in rejecting the petitioner's federal claim. *Id*. at 267.

In the instant case, the Ohio Supreme Court clearly enforced the contemporaneous objection rule in rejecting Petitioner's claim that the jury was not properly sworn. Thus, the second part of the *Maupin* test has been satisfied and Petitioner does not appear to argue otherwise.

The Court further finds that the procedural rule is adequate and independent under the third part of the *Maupin* test. To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law. *See Coleman v. Thompson*, 501 U.S. 722, 732-33 (1991). To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts. *Ford v. Georgia*, 498 U.S. 411 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim." *Id*. at 423 (quoting *James v. Kentucky*, 466 U.S. 341, 348-351 (1984)). *See also Barr v. City of Columbia*, 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 297 (1964); *see also Jamison v. Collins*, 100 F. Supp.2d 521, 561 (S.D. Ohio 1998). Ohio's contemporaneous objection rule is clearly stated and regularly enforced. *See, e.g., State v. Underwood*, 3 Ohio St. 3d 12, syllabus (1983)("The failure to object to a jury instruction constitutes a waiver of any

claim of error thereto...."); *State v. Durhin*, , 66 Ohio St. 2d 158, 161 (1981)(failure to object to jury instruction improperly allocating burden of proof is waiver). Ohio's contemporaneous objection rule serves important state interests in judicial economy and minimizing reversible error by enabling a trial judge to remedy errors at the earliest possible opportunity or prevent them altogether. Finally, Ohio's contemporaneous objection rule--even with the application of plain error review--does not rely on or otherwise implicate federal law. The Sixth Circuit has consistently ruled that Ohio's contemporaneous objection rule is an adequate and independent procedural rule that bars federal habeas corpus review absent a demonstration of cause for the waiver and resulting prejudice. *See Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell,* 209 F.3d 854, 866-71 (6th Cir. 2000); *see also Osborne v. Ohio*, 495 U.S. 103, 123 (1990); *Engle v. Isaac*, 456 U.S. 107, 124-25 (1982).

Once the Court determines that petitioner's claim is subject to procedural default and that the procedural rule is an adequate and independent state ground upon which to deny federal review, this Court will not review the merits of that claim unless petitioner demonstrates cause and prejudice sufficient to excuse the default. Petitioner has offered neither, but asserts that he can demonstrate both. Arguing that any discussion whether cause and prejudice excuses the default of a claim necessarily requires a discussion of the underlying merits of the claim, Petitioner requests the Court to hold in abeyance any procedural default ruling until after he submits his merits briefs. (Doc.# 26, at 6.) This Court is mindful of the Sixth Circuit's admonition in *Scott v. Mitchell*, 209 F.3d 854, 872 (6th Cir. 2000), that, "evaluating the merits to determine the applicability of procedural default is circular and undermines the federalism concerns behind the doctrine." That said, the Court will entertain in its final decision addressing

the merits of Petitioner's claims any <u>good</u> <u>faith</u> cause and prejudice argument, such as a

<u>colorable</u> claim of ineffective assistance of counsel.

### 3. Cognizability.

As an additional matter, Respondent urges the Court to dismiss Petitioner's second claim

for relief as not cognizable in federal habeas corpus because it is a state law claim rather than a

federal law claim. This Opinion and Order addresses only whether any of Petitioner's claim are

procedurally defaulted. The Court will address in a subsequent order any claims not subject to

procedural default. Accordingly, the Court **DENIES** Respondent's motion to dismiss

Petitioner's second claim for relief as not cognizable in federal habeas corpus.

### 4. Conclusion.

Because the Court has not yet made a determination of whether cause and prejudice

might excuse the apparent default of Petitioner's second claim for relief, due to not only his

failure to fairly present the claim but also his failure to preserve the claim at trial in violation of

Ohio's contemporaneous objection rule, the Court cannot conclude that Petitioner's second claim

for relief is procedurally defaulted. The Court accordingly **DENIES** Respondent's motion to

dismiss claim two, subject to reconsideration once the Court considers any good faith, colorable

cause and prejudice arguments that Petitioner might offer.

**B.**     <u>**Third Claim for Relief**</u>**: Petitioner's convictions and sentences are constitutionally infirm because the trial court prosecutor violated his right to a public trial.**

Petitioner argues in his third claim for relief that his right to a public trial was violated

when, according to Petitioner, the prosecution prevented two individuals named Gretchen Roese

and Susan Doering from attending Petitioner's trial by requiring them to present identification in

27

order to enter the courtroom and by telling them that they might be called as witnesses. (Doc. # 16, at ¶¶ 19-26.)

Respondent urges the Court to dismiss Petitioner's claim as "non-cognizable in habeas because the Supreme Court of the Untied States has never determined any clearly established federal law on the right to public trial and partial courtroom closures." (Doc. # 25, at 3.) In the alternative, Respondent summarily argues that Petitioner defaulted his third claim by failing to object at trial. (*Id*. at 5.) Finally, Respondent argues that "Petitioner's claim is devoid of merit." (*Id*., at 5-6)

Petitioner argues in response that any arguments concerning the existence of clearly established law and the relative merits of Petitioner's claim should be reserved for merit briefing. (Doc. # 26, at 7-8.) This Court agrees and **DENIES** Respondent's motion to dismiss claim three on those bases. As to Respondent's actual procedural default argument, Petitioner appears to urge the Court to defer any determination of whether he defaulted claim three by failing to preserve the issue at trial in violation of Ohio's contemporaneous objection rule until after Petitioner submits his merits brief. (*Id*. at 7.)

In his reply, Respondent argues this Court may dismiss claim three because the determination of whether or to what extent there exists clearly established Supreme Court precedent is not a merits issue. (Doc. # 27, at 8.) Asserting that federal habeas corpus does not permit notice pleading, Respondent also argues that "Petitioner should have already provided the merits of his claim in his petition." (*Id*.) Finally, as to Petitioner's argument urging the Court to hold in abeyance any determination whether Petitioner can demonstrate cause and prejudice sufficient to excuse his failure to preserve the claim in violation of Ohio's contemporaneous

objection rule, Respondent argues that it is not necessary to evaluate the merits of a claim in order to determine whether it is procedurally defaulted and that Petitioner had an opportunity to make any cause and prejudice arguments. (*Id.*, at 6-7 (citing *Scott v. Mitchell*, 209 F.3d at 872).)

Turning to the *Maupin* test, the issue before the Court is whether a state procedural rule was applicable to Petitioner's claim and, if so, whether he violated it. Respondent argues that Petitioner violated Ohio's contemporaneous objection rule when he failed to object during trial to the prosecution's alleged exclusion of certain spectators from Petitioner's trial in violation of his right to a public trial. But the law is murky as to whether a defendant's failure to object to an alleged violation of the right to public trial waives that defendant's right to a public trial. Close to the time Petitioner stood trial, there existed authority suggesting that a defendant's failure to object to the closure of the courtroom or exclusion of spectators did waive all but plain error on appeal. *See State v. Whitaker*, No. 83824, 2004 WL 2340432, at * 2 (Ohio App. 8 Dist. Sep. 23, 2004) ("Failure to object to closing of the courtroom constitutes a waiver of the right to a public trial"); *see also State v. Hairston*, No. 05CA008768, 2006 WL 2716833, at * 3 (Ohio App. 9 Dist. Sep. 25, 2006) (same) (citing *Levine v. United States*, 362 U.S. 610, 618-19 (1960)). However, in 2006, the Ohio Supreme Court issued a decision in which it held that, "[a]lthough Bethel did not object to the closing of the hearing, the right to a public trial under Section 10, Article I of the Ohio Constitution cannot be waived by the defendant's silence." *State v. Bethel*, 110 Ohio St. 3d 416, 428 (2006).[1] Recently, the Ohio Court of Appeals for the Tenth Appellate District, (which governs the court of common pleas in which Petitioner Conway stood trial), interpreted the Ohio Supreme Court's *Bethel* decision as holding "that the right to a public trial

---

[1] The Court recognizes that the Ohio Supreme Court was construing the right to a public trial as set forth in the Ohio Constitution.

cannot be waived by silence." *State v. Sowell*, No. 06AP-443, 2008 WL 2600222, at *7 (Ohio App. 10 Dist. June 30, 2008).

Further muddying the determination of whether Petitioner violated a state procedural rule when he failed to object at trial to the prosecution's alleged exclusion of spectators from Petitioner's trial in violation of Petitioner's right to a public trial, sufficient to waive all but plain error, is the fact that although Petitioner failed to preserve the alleged error at trial with a contemporaneous objection, he did bring the alleged error to the trial court's attention in a motion for new trial, upon which the trial court conducted a hearing. (Tr. Vol. 17.) Analogous authority concerning the limitations of motions *in limine* suggests that anything short of a timely objection at the time the claimed error occurs is insufficient to preserve the claimed error for appellate review. *Cf. State v. Hancock*, 108 Ohio St. 3d 57, 67 (2006); *State v. Grubb*, 28 Ohio St. 3d 199, 203 (1986). That said, recent decisions suggesting that the right to a public trial cannot be waived by silence, combined with the fact that Petitioner did attempt to present this claimed error to the trial court in a motion for a new trial, make it difficult for this Court to conclude that Petitioner violated a clearly established state procedural rule when he failed to object at trial to the prosecution's alleged exclusion of certain spectators from his trial in violation of his right to a public trial.

For the foregoing reasons and out of an abundance of caution, the Court **DENIES** Respondent's motion to dismiss claim three as procedurally defaulted.

**C.      Fourth Claim for Relief: Petitioner's convictions and sentences are constitutionally infirm because the trial court improperly curtailed the cross examination of the prosecution's informant.**

**Sixth Claim for Relief**: **Petitioner's convictions and sentences are constitutionally infirm because the trial court precluded admission of the computer simulation.**

Petitioner argues in his fourth claim for relief that the trial court erred to Petitioner's prejudice when it prevented him from cross-examining jailhouse informant Ronald Trent about the facts of an earlier criminal case in which Trent had submitted a perjured affidavit averring that he had committed criminal actions that he in fact had not committed. (Doc. # 16, at ¶¶ 27-34). He argues in his sixth claim for relief that the trial court erred to his prejudice by not admitting during the defense case-in-chief a mechanical engineer's computer simulation purporting to reconstruct the shooting. (*Id*. at ¶¶ 42-47.)

Although Respondent's arguments are somewhat difficult to decipher, due to his conflating several exhaustion and procedural default concepts, Respondent appears to argue that Petitioner defaulted both claims by failing to fairly present them to the state courts as federal constitutional claims. (Doc. # 25, at 6-7.) Respondent appears to argue in the alternative that the Court should dismiss both claims because of Petitioner's failure to cite the Supreme Court precedent upon which he bases each claim and because each claim appears to be based on state evidentiary law. For reasons discussed more fully above, the Court will address in the instant order only procedural arguments and will, accordingly, **DENY** Respondent's motion to dismiss claims four and six as not involving United States Supreme Court precedent or as not stating federal claims upon which habeas corpus relief can be granted.

Petitioner offers several arguments in response to Respondent's fair presentment defense. As to his fourth claim for relief, Petitioner argues not only that he "specifically cited the Sixth, Eighth and Fourteenth Amendments in raising this claim before the Ohio Supreme Court," but

that he also cited to rules of evidence concerning impeachment that "are materially distinguishable from the Confrontation provision of the Federal Constitution." (Doc. # 26, at 9.) With respect to Respondent's argument that Petitioner also failed to fairly present his sixth claim for relief, Petitioner argues primarily that he cited the Sixth, Eighth, and Fourteenth Amendments in his brief to the Ohio Supreme Court, and alternatively that ineffective assistance of appellate counsel constitutes cause and prejudice sufficient to excuse any failure on Petitioner's part to fairly present the claim to the Ohio Supreme Court as a federal constitutional claim. (*Id*. at 11.) Regarding the latter, Petitioner resurrects his argument that because addressing cause and prejudice will require him to address the merits of the underlying evidentiary ruling, this Court should defer any ruling on whether Petitioner waived the claim until after Petitioner submits his merits brief.

The only argument that Respondent offers in reply is his argument that this Court ought not await merits briefing before making its procedural default determination. (Doc. # 27, at 6-7.)

The first question before the Court is whether Petitioner failed to fairly present his fourth and/or sixth claims for relief. By way of reminder, in the Sixth Circuit, a Petitioner can satisfy the fair presentment claim in one of four manners: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *McMeans*, 228 F.3d at 681. Further, general allegations of the denial of constitutional rights, such as the rights to a fair trial or due process, are insufficient to satisfy the "fair presentment" requirement. *Id*.

In the instant case, Petitioner argued in a single proposition of law that the trial court had erred in excluding a computer simulation of the shooting prepared by Petitioner's expert and by limiting Petitioner's cross-examination of government witness Ronald Trent concerning an earlier, unrelated criminal case in which he had perjured himself.  (App. Vol. 6, at 157-63.)  Petitioner styled the heading of that proposition of law as follows: "The trial court commits prejudicial error in denying the defense an expert witness on a computer simulation; and in restricting cross-examination of a primary prosecution witness, contra the Sixth, Eighth and Fourteenth Amendments to the United States Constitution."  (*Id*. at 157.)  Although Petitioner mentioned specific constitutional amendments in the heading, doing so does not appear to satisfy any of the four methods by which a petitioner may, in the view of the Sixth Circuit, fairly present a claim.

In the body of his argument challenging the trial court's exclusion of an expert-generated computer simulation purporting to re-enact the shooting (sixth claim for relief), Petitioner did not rely on federal cases employing federal constitutional analysis, leaving this Court to determine whether he managed either to rely on state cases employing federal constitutional analysis, to phrase the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right, or to allege facts well within the mainstream of constitutional law.  Petitioner argued that the trial court's action deprived him (Petitioner) of his right to present a defense.  Petitioner then quoted from and discussed extensively a state appellate court decision that itself employed state standards, state decisions, and state evidentiary provisions concerning the admissibility of expert testimony.  (App. Vol. 6, at 157-61 (discussing *State v. Clark*, 101 Ohio App. 3d 389 (Ohio App. 8 Dist. 1995).)  The *Clark* decision did cite to

and discuss a United States Supreme Court decision: *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). But *Daubert* employed federal evidentiary analysis, not federal constitutional analysis. Those are not one and the same. By relying so heavily on *Clark* and its state law standards concerning the admissibility of expert testimony, Petitioner did not phrase his claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right, or allege facts well within the mainstream of constitutional law. Accordingly, the Court concludes that Petitioner failed to fairly present his sixth claim for relief.

In the body of his argument alleging that the trial court erred in restricting Petitioner's cross-examination of jailhouse informant Ronald Trent (fourth claim for relief), Petitioner argued that exceptions to Ohio R. Evid. 608(B) permitted the kind of cross-examination that the trial court refused to permit. (App. Vol. 6, at 161-63.) In support, Petitioner relied on the Ohio Supreme Court decision of *State v. Jackson*, 57 Ohio St. 3d 29 (1991). *Jackson*, in turn, discussed Ohio R. Evid. 405(A), Ohio Rev. Code § 2929.04(B), and several state court decisions in determining that the prosecutor had not erred in cross-examining a defense witness regarding the witness's opinion of Petitioner's character. *Jackson*, 57 Ohio St. 3d at 39. The Court cannot find from the foregoing that Petitioner fairly presented his fourth claim for relief. He neither relied on federal or state cases employing federal constitutional analysis, nor phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right, nor alleged facts well within the mainstream of constitutional law.

The Court having determined that Petitioner failed to fairly present his fourth and sixth claims for relief, the Court cannot review the merits of those claims absent a showing of cause and prejudice sufficient to excuse Petitioner's waiver of those claims. Beyond alluding that

appellate counsel ineffectiveness constitutes cause and prejudice, Petitioner has offered neither but asserts that he can demonstrate both. Out of an abundance of caution, the Court will entertain in its final decision addressing the merits of Petitioner's claims any <u>good</u> <u>faith</u> cause and prejudice argument, such as a <u>colorable</u> claim of ineffective assistance of appellate counsel.

Because the Court has not yet made a determination of whether cause and prejudice might excuse the apparent waiver of Petitioner's fourth and sixth claims for relief, due to his failure to fairly present those claims, the Court cannot conclude that Petitioner waived his fourth and sixth claims for relief. The Court accordingly **DENIES** Respondent's motion to dismiss claims four and six, subject to reconsideration once the Court considers any good faith, colorable cause and prejudice arguments that Petitioner might offer.

D.     <u>**Fifth Claim for Relief**</u>**: Petitioner's convictions and sentences are constitutionally infirm because the trial court permitted a former member of the prosecutor's office to testify in the State's case in chief.**

Petitioner argues in his fifth claim for relief that testimony from a former prosecuting attorney, David DeVillers, concerning discovery that the State furnished to defense counsel constituted inflammatory evidence that the trial court should have excluded because Mr. DeVillers held too much sway with the jury. (Doc. # 16, at ¶¶ 35-41.)

Respondent argues that Petitioner defaulted this claim by failing to preserve the issue at trial with a contemporaneous objection. (Doc. # 25, at 7-8.) Respondent also argues that Petitioner waived the claim by failing to fairly present the claim as a federal constitutional claim. In that regard, Respondent argues that Petitioner's "cursory mention" of federal constitutional amendments and a state decision citing federal circuit law is insufficient to satisfy the fair presentment requirement. (*Id*. at 9.)

Petitioner argues in response that he fairly presented this claim by citing *United States v. Johnson*, 690 F.2d 638 (7th Cir. 1982), in his direct appeal brief to the Ohio Supreme Court. (Doc. # 26, at 10.)  Regarding Respondent's argument that he also defaulted the claim by failing to preserve it at trial, Petitioner concedes that defense counsel failed to timely object to the alleged error, but maintains that he can demonstrate cause and prejudice sufficient to excuse the default once he submits his merits briefing.  Thus, as he has with every other claim alleged to be defaulted, Petitioner requests the Court to delay addressing the issue of cause and prejudice until after he submits his merits briefing.  (*Id.* at 10-11.)

The only arguments that Respondent offers in reply are his arguments that cursory mentions of federal law are insufficient to constitute fair presentment and that this Court ought not await merits briefing before making its procedural default determination.  (Doc. # 27, at 2-5, 6-7.)

The first issue for the Court to resolve is whether Petitioner failed to fairly present his claim to the state courts as a federal constitutional claim.  As previously discussed, in the Sixth Circuit, a Petitioner can satisfy the fair presentment claim in one of four manners:  (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.  *McMeans*, 228 F.3d at 681.  Further, general allegations of the denial of constitutional rights, such as the rights to a fair trial or due process, are insufficient to satisfy the "fair presentment" requirement.  *Id.*  Petitioner styled the heading of his eighteenth proposition of law on direct appeal to the Ohio Supreme Court as follows:

"Prejudicial error occurs when an assistant prosecutor, previously active in the case, testifies in the case in chief, contra the Sixth, Eighth[,] and Fourteenth Amendments to the Constitution." (App. Vol. 6, at 146.)  As previously noted, however, because the mere mention of specific constitutional amendments in the heading does not appear to satisfy any of the four methods by which a petitioner may, in the view of the Sixth Circuit, fairly present a claim, this Court must determine whether Petitioner otherwise fairly presented his claim.

In the body of his argument, Petitioner set forth the facts underlying his claim and then discussed the decision of *State v. Coleman*, 45 Ohio St. 3d 298, paragraph two of the syllabus (1989), for the proposition that a prosecuting attorney should not testify during the course of a prosecution.  (App. Vol. 6, at 147-48.)  *Coleman*, in turn, relied on *United States v. Johnston*, 690 F.2d 638, 644 (7th Cir. 1982), for the proposition that although such testimony should be avoided, it may be permissible under extraordinary circumstances or for compelling reasons.  *Coleman*, 45 Ohio St. 3d at 301-02.  Petitioner concluded the body of his argument by asserting that no such circumstances existed in his case, that obvious prejudice resulted because the status of the prosecutor's office supplied credibility to Trent's testimony, and that this prejudicial error entitled him to a new trial.  Scrutiny of Petitioner's argument reveals that he did not phrase his claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right, and did not allege facts well within the mainstream of constitutional law.

Further, the Court rejects Petitioner's argument that his reliance on a state case that in turn cited a federal circuit case satisfies the fair presentment requirement.  Merely citing a federal case does not satisfy the Sixth Circuit's criteria for fairly presentment of a claim where

that federal case does not employ federal constitutional analysis. Federal cases do not always necessarily employ federal constitutional analysis and, in this instance, the *Johnston* case did not. The *Johnston* decision, reference to which Petitioner insists satisfied the fair presentment requirement, discussed the historical underpinnings of advocate-witness rule, as well as its contemporary form as set forth in both the ABA Code of Professional Responsibility and the Code's disciplinary rules. Neither *Johnston* nor *Coleman* mentioned, much less employed, federal <u>constitutional</u> analysis. Petitioner will not be heard to argue from the foregoing that the Ohio Supreme Court was sufficiently alerted that he (Petitioner) was alleging a violation of his federal constitutional rights. Accordingly, the Court agrees with Respondent that Petitioner failed to fairly present his eighth claim for relief.

The next issue for the Court to resolve is whether Petitioner's failure to comply with Ohio's contemporaneous objection rule results the default of Petitioner's claim. Respondent argues, Petitioner concedes, and review of the transcript confirms that although Petitioner's defense counsel raised occasional objections to certain aspects of Mr. DeVillers's testimony, (Tr. Vol. 11, at 1986, 1998), they never raised a contemporaneous objection to Mr. DeVillers testifying. (*Id*., at 1972-2003.) Thus, Petitioner violated an applicable state procedural rule. The Ohio Supreme Court clearly enforced the rule, when it stated that, "Conway did not object to DeVillers's testimony at trial and has waived all but plain error." *Conway*, 108 Ohio St. 3d at 234; (App. Vol. 7, at 283.) Further, the Court has already noted that the rule is adequate and independent.

The first three parts of the *Maupin* test having been satisfied, Petitioner's fifth claim for relief, in addition to having been waived due to his failure to fairly present it, also appears to be

defaulted.  All that remains for the Court to determine is whether Petitioner can demonstrate cause and prejudice sufficient to excuse the default.  Out of an abundance of caution, the Court will entertain in its final decision addressing the merits of Petitioner's claims any <u>good</u> <u>faith</u> cause and prejudice arguments Petitioner might offer to salvage his fifth claim for relief, such as a <u>colorable</u> claim of ineffective assistance of trial or appellate counsel.

Because the Court has not yet made a determination of whether cause and prejudice might excuse the apparent default of Petitioner's fifth claim for relief, due to not only his failure to fairly present the claim but also his failure to preserve the claim at trial in violation of Ohio's contemporaneous objection rule, the Court cannot conclude that Petitioner's fifth claim for relief is procedurally defaulted.  The Court accordingly **DENIES** Respondent's motion to dismiss claim five, subject to reconsideration once the Court considers any good faith, colorable cause and prejudice arguments that Petitioner might offer.

**E.**     <u>**Eighth Claim for Relief**</u>**: Petitioner's convictions are constitutionally infirm because the trial court failed to afford him his right to be present for all critical stages of the proceedings.**

Petitioner complains that he was not present for the jury instruction conferences that, according to a remark by the trial court, were conducted on the afternoon/evening of January 29, 2003, and the morning of January 30, 2003.  (Doc. # 16, at ¶¶ 57-62.)

Respondent argues that Petitioner defaulted this claim by failing to assert a contemporaneous objection at trial.  (Doc. # 25, at 8-9.)  Beyond procedural default, Respondent also urges the Court to dismiss claim eight due to Petitioner's failure to cite the Supreme Court precedent upon which he bases the claim.  Because this Opinion and Order addresses only procedural default, the Court **DENIES** the latter argument as not properly before it.

Petitioner offers several responses to Respondent's lone procedural default argument. First, Petitioner argues that, to the extent the Ohio Supreme Court's decision suggested that Petitioner committed some sort of waiver or acquiescence by failing to assert an objection *himself*, that does not constitute an adequate and independent state ground sufficient to foreclose habeas corpus review. (Doc. # 26, at 13.) Petitioner reasons that such a "rule effectively requires the accused to engage in forced self-representation for the purpose of preserving a federal claim" in violation of the tenet that "states may not force the accused to represent himself." (*Id.* (citing *Gideon v. Wainwright*, 372 U.S. 335 (1963)) Second, Petitioner appears to concede that defense counsel failed to assert a contemporaneous objection at trial, but argues that he can demonstrate cause and prejudice to excuse the default once he presents his merits briefing. (Doc. # 26, at 13-14.) Thus, as he has with every other claim alleged to be defaulted, Petitioner requests the Court to delay addressing the issue of cause and prejudice until after he submits his merits briefing.

The only arguments that Respondent offers in reply are his arguments that claims not based on clearly established Supreme Court precedent cannot support habeas corpus relief under 28 U.S.C. § 2254(d)(1) and that this Court ought not await merits briefing before making its procedural default determination. (Doc. # 27, at 5-7.)

Turning to the *Maupin* test, the issue before the Court is whether Petitioner violated a state procedural rule and, if so, whether the state courts actually denied Petitioner's claim on the basis of that rule. It is true, as Petitioner alleges in claim eight, that when court convened at 10:50 a.m. on Thursday, January 30, 2003, the trial court remarked (out of the hearing of the jury): "The Court has met with Counsel for approximately three-and-a-half hours on the jury

charge, two hours last night, hour-and-a-half this morning." (Tr. Vol. 15, at 2527.) Neither Petitioner nor defense counsel raised any sort of objection at that time. Nearly a week later (following Petitioner's conviction but before commencement of his mitigation hearing) on the morning of February 5, 2003 immediately preceding the commencement of the mitigation hearing, defense counsel raised some issues for the record concerning primarily Petitioner's dissatisfaction with defense counsel and desire for new counsel, as well as the alleged exclusion from the courtroom of some of Petitioner's friends and relatives. (Tr. Vol. 16, at 2749-76.) At various times during the back-and-forth between the trial court, attorneys, and Petitioner, Petitioner complained about the fact that he had not been present during various legal proceedings and specifically mentioned "discussions of the charges to the jury." (*Id*. at 2752, 2765.) Ohio's contemporaneous objection rule applies to alleged violations of a defendant's right to be present during all critical proceedings. *State v. Palmer*, 80 Ohio St. 3d 543, 559 (1997); *State v. Joseph*, No. 1-91-11, 1993 WL 531858, at * 30 (Ohio App. 3 Dist. Dec. 23, 1993). Further, a contemporaneous objection, by its very definition, must be made in a timely manner–before the error is committed or can cause any prejudice. In the instant case, the only objection that was made to the fact that Petitioner was not present during certain conferences and discussions concerning the trial court's culpability-phase charge to the jury was made one week after those discussions took place, after the jury charge was given, and after Petitioner was convicted. Under no definition of "contemporaneous objection" can that objection be deemed timely. Thus, the Court concludes that Ohio's contemporaneous objection rule applies to Petitioner's claim that his rights were violated by his absence during certain off-the-record discussions and that Petitioner violated the rule.

41

The second part of the *Maupin* test requires the Court to determine whether the state courts actually enforced the rule and denied Petitioner's claim–not on the merits–but on the basis of his failure to comply with the applicable state procedural rule. Petitioner presented this issue to the Ohio Supreme Court on direct appeal in his third proposition of law, arguing that the trial court had denied him his rights to a fair trial and due process of law by conducting critical stages of the trial outside his presence. (App. Vol. 6, at 75-77.) After setting forth the general law governing an accused's absence from certain stages of his criminal trial, the Ohio Supreme Court rejected Petitioner's claim primarily on the basis of his failure to object at trial:

> The conference on jury instructions was held on January 29 and was continued on January 30, 2003. On January 29, before the conference began, the trial judge announced in open court that the parties would be meeting that afternoon to discuss the guilt-phase jury charge. No objection to Conway's absence was raised until February 5, 2003, just before the start of the penalty phase. Conway's failure to timely object constituted a waiver of his right to be present. *State v. Palmer* (1997), 80 Ohio St. 3d 543, 559, 1997 Ohio 312, 687 N.E.2d 685.

*Conway*, 108 Ohio St. 3d at 223; (App. Vol. 7, at 275.) The Ohio Supreme Court went on to reject the claim on the merits, but that cannot be regarded as anything but an alternative ruling, and Petitioner does not argue otherwise.

As for the third part of the *Maupin* test, this Court has already noted that Ohio's contemporaneous objection rule is an adequate and independent ground upon which to deny federal habeas corpus relief. The Court rejects Petitioner's argument that, to the extent the Ohio Supreme Court's decision suggested that Petitioner had committed some sort of waiver or acquiescence by failing to assert an objection *himself*, that does not constitute an adequate and independent state ground sufficient to foreclose habeas corpus review because such a "rule effectively requires the accused to engage in forced self-representation for the purpose of

preserving a federal claim" in violation of the tenet that "states may not force the accused to represent himself." (Doc. # 26, at 13 (citing *Gideon v. Wainwright*, 372 U.S. 335 (1963)).) In short, Petitioner has not established, and this Court is not otherwise persuaded, that the Ohio Supreme Court identified or enforced any such rule in rejecting Petitioner's claim. Further, the Court finds nothing in violation of the "adequate and independent" requirement about the state courts faulting a defendant for failing to assert his own objection when his defense attorneys acquiesce to proceedings outside his presence. *See, e.g., State v. Frazier*, 115 Ohio St. 3d 139, 159-60 (2007).[2]

The first three parts of the *Maupin* test having been satisfied, Petitioner's eighth claim for relief appears to be defaulted. All that remains for the Court to determine is whether Petitioner can demonstrate cause and prejudice sufficient to excuse the default. Out of an abundance of caution, the Court will entertain in its final decision addressing the merits of Petitioner's claims any <u>good</u> <u>faith</u> cause and prejudice arguments Petitioner might offer to preserve his eighth claim for relief, such as a <u>colorable</u> claim of ineffective assistance of trial counsel.

Because the Court has not yet made a determination of whether cause and prejudice might excuse the apparent default of Petitioner's eighth claim for relief, the Court cannot

---

[2]    In *Frazier*, the Ohio Supreme Court rejected numerous claims by the defendant-appellant that the trial court had his fundamental right to be present by conducting various in-chambers conferences without his presence. The Ohio Supreme Court, relying on federal law, rejected at least one of those claims on the basis of the defendant-appellant's failure to assert his own objection:

> Fourth, Frazier complains about his absence during an in-chambers conference on May 3, 2005. During this conference, the parties discussed the status of pretrial negotiations and scheduling issues. Frazier was in open court and did not object when the defense counsel waived Frazier's presence at the in-chambers conference. Thus, Frazier's presence was properly waived. See *United States v. Gagnon*, 470 U.S. at 528, 105 S.Ct. 1482, 84 L.Ed.2d 486 (trial court "need not get an express 'on the record' waiver from the defendant for every trial conference which a defendant may have a right to attend"); *United States v. Gallego* (C.A.2, 1999), 191 F.3d 156, 171 (waiver can be implied by accused's failure to object to exclusion).

conclude that Petitioner's eighth claim for relief is procedurally defaulted. The Court

accordingly **DENIES** Respondent's motion to dismiss claim eight, subject to reconsideration

once the Court considers any good faith, colorable cause and prejudice arguments that Petitioner

might offer.

F.    <u>Ninth Claim For Relief</u>: **Petitioner's convictions and sentences are
      constitutionally infirm because the trial court refused to charge the jury on
      the lesser included offenses of manslaughter and involuntary manslaughter.**

Petitioner argues that testimony from the State's own witnesses, as well as the defense's

case in chief, concerning the chaotic incidents in the parking lot that immediately preceded the

aggravated murder for which Petitioner was convicted and sentenced to death constituted

evidence warranting an instruction on the lesser included offenses of manslaughter and

involuntary manslaughter. (Doc. # 16, at ¶¶ 63-77.)

Respondent offers several arguments in support of his motion to dismiss this claim, only

two of which involve procedural default. (Doc. # 25, at 9-11.) First, Respondent argues that

Petitioner failed to fairly present his claim to the state courts as the federal claim that he now

seeks to present. In this regard, Respondent argues that Petitioner's cursory mention of

constitutional amendments in his direct appeal brief was insufficient to satisfy the fair

presentment requirement. Second, Respondent argues that Petitioner also defaulted this claim by

failing to preserve it at trial with a contemporaneous objection. Finally, Respondent argues that

this Court should dismiss Petitioner's claim because of Petitioner's failure to cite any Supreme

Court precedent on which Petitioner bases his claim.

Petitioner offers several arguments in response. (Doc. # 26, at 14-16.) First, as to

Respondent's argument essentially urging the Court to dismiss claim nine as lacking merit or

Supreme Court precedent in support, Petitioner argues that Respondent makes a merits argument that should be left until later briefing. The Court agrees and, in keeping with it resolution to address only procedural default arguments in the instant order, **DENIES** Respondent's motion in that regard.

With respect to Respondent's argument that Petitioner failed to present his claim as a federal constitutional claim, Petitioner argues that he specifically cited the Fifth and Sixth Amendments, and that doing so was sufficient to satisfy the fair presentment requirement. Finally, as to Respondent's argument that Petitioner failed to lodge a contemporaneous objection at trial, Petitioner argues that because the Ohio Supreme Court did not deny his claim on the basis of that state procedural rule, Petitioner's claim is properly before the Court for review on the merits.

The only arguments that Respondent offers in reply are his arguments that cursory mentions of federal law are insufficient to constitute fair presentment, that claims not based on clearly established Supreme Court precedent cannot support habeas corpus relief under 28 U.S.C. § 2254(d)(1), and that this Court ought not await merits briefing before making its procedural default determination. (Doc. # 27, at 2-7.)

The Court turns first to Respondent's argument that Petitioner failed to fairly present this claim as a federal constitutional question. By way of reminder, in the Sixth Circuit, a Petitioner can satisfy the fair presentment claim in one of four manners: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the

mainstream of constitutional law.  *McMeans*, 228 F.3d at 681.  Further, general allegations of the denial of constitutional rights, such as the rights to a fair trial or due process, are insufficient to satisfy the "fair presentment" requirement.  *Id.*

Petitioner presented this claim to the Ohio Supreme Court in his first proposition of law and styled the heading as follows: "The trial court abused its discretion in denying Appellant's request for an instruction on voluntary manslaughter and involuntary manslaughter, thereby denying Appellant his right to a fair trial and due process of law under the Fifth and Sixth Amendments to the United States Constitution and Article One, Section Ten of the Ohio Constitution."  (App. Vol. 6, at 69.)  The Court has observed already that the mere mention of constitutional amendments does not appear to satisfy the four methods set forth by the Sixth Circuit for satisfying the fair presentment requirement.  But this heading, by alleging infringement of the rights to a fair trial and due process, arguably hints at terms particular to the denial of specific constitutional rights and at facts within the mainstream of constitutional law.

In the body of his argument, however, Petitioner did not follow through on those hints. He relied on state statutory and state case law definitions of voluntary manslaughter being an inferior degree of aggravated murder and involuntary manslaughter being a lesser offense of aggravated murder.  (App. Vol. 6, at 69-73.)  (To be fair, however, that is to be expected from a prisoner charged, convicted, and sentenced under the Ohio Revised Code.)  Petitioner set forth the trial evidence that he believed gave rise to a right to instructions on those lesser included offenses, not as required by the Constitution or due process or fundamental fairness, but as required by state law.  (*Id.* (citing *State v. Shane*, 63 Ohio St. 3d 360 (1992))  In arguing that the trial court had erred in denying defense counsel's request for instructions on the lesser included

46

offenses, Petitioner spoke not in terms of the trial court violating his rights to a fair trial or due process, or even in terms of the sufficiency of the evidence supporting the lesser included offenses, but in terms of the trial court abusing its discretion.

Although this claim involves offenses defined in the Ohio Revised Code and interpreted in Ohio decisions, Petitioner could have federalized this claim. But he did not. There is no shortage of cases in which this precise issue was framed, and accordingly addressed, as a federal constitutional claim. *See, e.g., Beck v. Alabama*, 447 U.S. 625, 638 (1980); *Bowling v. Parker*, 344 F.3d 487, 500 (6th Cir. 2003) (holding that due process does not require instruction on lesser included offense where evidence does not support the instruction); *Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002) (discussing whether failure to give instruction on lesser included offense in a non-capital case constitutes a fundamental defect, miscarriage of justice, or denial of fundamental fairness); *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001) (discussing whether the Constitution requires instruction on lesser included offense in a non-capital case). Petitioner now cites *Beck v. Alabama* in his memorandum in opposition (Doc. # 26, at 15), but he failed to do so in his direct appeal brief to the Ohio Supreme Court. In fact, he failed to cite any federal or state cases employing federal constitutional analysis, to phrase his claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or to allege facts well within the mainstream of constitutional law. For the foregoing reasons, the Court sustains Respondent's argument that Petitioner failed to fairly present his ninth claim for relief to the state courts as a federal constitutional claim.

The Court turns now to Respondent's argument that Petitioner also committed procedural default as to his ninth claim for relief by failing to raise a contemporaneous objection at trial, and

Petitioner's argument in response that the Ohio Supreme Court rejected his claim not on the basis of that alleged default, but on the merits. Petitioner's argument is well taken. Even assuming that Petitioner had failed to lodge a contemporaneous objection–an assumption this Court does not make, in light of defense counsel's extensive efforts to persuade the trial court to give an instruction on the lesser included offenses of voluntary manslaughter and involuntary manslaughter–the fact remains that nowhere in its decision rejecting Petitioner's claim did the Ohio Supreme Court mention, much less enforce, Petitioner's alleged violation of the contemporaneous objection rule as to his claim challenging the trial court's refusal to instruct the jury on lesser included offenses. Thus, Respondent's argument in this regard fails the second part of the *Maupin* test and the Court accordingly rejects Respondent's argument that Petitioner committed procedural default by failing to raise a contemporaneous objection as to his ninth claim for relief.

Although the Court has determined that Petitioner did not commit procedural default as to his ninth claim for relief by failing to lodge a contemporaneous objection at trial, the Court has also determined that Petitioner did fail to fairly present this claim to the state courts as a federal constitutional claim, thereby subjecting the claim to waiver. All that remains for the Court to determine is whether Petitioner can demonstrate cause and prejudice sufficient to excuse his failure to fairly present claim nine. Out of an abundance of caution, the Court will entertain in its final decision addressing the merits of Petitioner's claims any <u>good</u> <u>faith</u> cause and prejudice arguments Petitioner might offer to enable this Court to review his ninth claim for relief, such as a <u>colorable</u> claim of ineffective assistance of appellate counsel.

Because the Court has not yet made a determination of whether cause and prejudice might excuse the apparent waiver of Petitioner's ninth claim for relief, due to his failure to fairly present the claim, the Court cannot conclude that Petitioner waived his ninth claim for relief. The Court accordingly **DENIES** Respondent's motion to dismiss claim nine, subject to reconsideration once the Court considers any good faith, colorable cause and prejudice arguments that Petitioner might offer.

G.     **Tenth Claim for Relief: Petitioner's convictions are constitutionally infirm because there was insufficient evidence to support his conviction for aggravated murder.**

Petitioner argues that there was insufficient evidence to support his conviction for aggravated murder, asserting specifically that there was insufficient evidence to support the essential element of prior calculation and design.  (Doc. # 16, at ¶¶ 78-88.)

Respondent urges the Court to dismiss Petitioner's claim as waived, due to Petitioner's failure to present it to the state courts as a federal constitutional claim.  (Doc. # 25, at 11-13.) Beyond procedural default, Respondent also argues that this Court should dismiss Petitioner's claim because of his failure "to cite the Supreme Court precedent on which he bases this claim." Finally, Respondent also appears to urge the Court to dismiss the claim as without merit. Because this Opinion and Order addresses only procedural default, the Court **DENIES** the latter two arguments as not properly before it.

Concerning Respondent's sole procedural default argument–namely, that Petitioner failed to fairly present claim ten–Petitioner argues that Respondent's argument fails for three reasons. (Doc. # 26, at 16-17.)  First, according to Petitioner, the Ohio Supreme Court actually addressed his claim as a federal constitutional claim by rejecting it on the basis of the Supreme Court

decision of *Jackson v. Virginia*, 443 U.S. 307 (1979). Second, Petitioner argues that he not only cited the Fifth and Fourteenth Amendments when he presented his sufficiency of the evidence claim to the Ohio Supreme Court, but also cited the Supreme Court decision of *Tibbs v. Florida*, 457 U.S. 31 (1982). Finally, Petitioner argues that "the standards for insufficient evidence under Ohio law are identical to those required by the Federal Constitution."

The only arguments that Respondent offers in reply are his arguments that cursory mentions of federal law are insufficient to constitute fair presentment and that claims not based on clearly established Supreme Court precedent cannot support habeas corpus relief under 28 U.S.C. § 2254(d)(1). (Doc. # 27, at 2-6.)

The Due Process Clause requires the State to prove every essential element of a charged offense beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 363-64 (1970). Beyond *Winship*, the seminal decision addressing such claims is *Jackson v. Virginia*, 443 U.S. 307 (1979), in which the Supreme Court held that, when reviewing a claim that there is insufficient evidence to support a conviction, "the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319 (emphasis in original). Against this backdrop, the Court concludes that Petitioner fairly presented his tenth claim for relief challenging the sufficiency of the evidence supporting his conviction.

First, Petitioner relied on several state cases that employed federal constitutional analysis. Specifically, Petitioner cited *State v. Thompkins*, 78 Ohio St. 3d 380, 386 (1997), in which the Ohio Supreme Court discussed, among other things, due process requirements for convictions, and also cited the United States Supreme Court decisions of *Tibbs v. Florida*, 457 U.S. 31

(1982), and *Jackson v. Virginia*. (App. Vol. 6, at 74.) Petitioner also cited *State v. Taylor*, 78 Ohio St. 3d 15 (1997), in which the Ohio Supreme Court cited to and applied the sufficiency of the evidence standards set forth in *Jackson v. Virginia*, and *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Second, Petitioner stated that "verdicts not supported by sufficient evidence violate defendant's due process rights" and cited in support a United States Supreme Court case that employed federal constitutional analysis, *Tibbs v. Florida*, 457 U.S. 31. (App. Vol. 6, at 74.) Finally, the Court is satisfied that Petitioner's claim alleging that the State provided insufficient evidence on the essential element of prior calculation and design presents a claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right, and alleges facts well within the mainstream of constitutional law. *Cf. Jeffries v. Morgan*, 429 F. Supp. 2d 868, 875 (E.D. Ky. 2006) (finding that sufficiency of the evidence claim was fairly presented where the petitioner cited a state case that relied heavily on *Jackson v. Virginia*, and articulated legal and factual bases substantially similar to the federal claim presented in habeas corpus), *rev'd on other grounds*, 522 F.3d 640 (6th Cir. 2008).

The Court also notes that the Ohio Supreme Court addressed Petitioner's claim as a federal constitutional claim. In rejecting Petitioner's claim, the Ohio Supreme explicitly framed its inquiry in the terms set forth in *Jackson v. Virginia* and adopted in *State v. Jenks*. (App. Vol. 7, at 273.) The Ohio Supreme Court examined the evidence presented at trial and concluded that "this evidence was sufficient to show that Conway had adopted a plan to kill Williams upon discovering that Williams had cut his brother and that Conway had carried out his plan." (App. Vol. 7, at 275.) Without holding that a state court's addressing a claim as a federal constitutional claim is determinative in an inquiry whether a petitioner fairly presented to the state courts a

claim that he seeks to present in federal habeas corpus, the Court is persuaded in the instant case that that fact bolsters the Court's conclusion that Petitioner, in challenging the sufficiency of the evidence supporting the essential element of prior calculation and design, adequately alerted the state courts that he was presenting a federal constitutional claim.

For the foregoing reasons, the Court concludes that Petitioner fairly presented his tenth claim for relief and **DENIES** Respondent's motion to dismiss claim ten as not fairly presented.

**H.**     **<u>Eleventh Claim for Relief</u>: Petitioner's Conviction for capital murder and his resulting death sentence is constitutionally infirm because the State failed to demonstrate by proof beyond a reasonable doubt that Petitioner was guilty of the single aggravating circumstance.**

In his eleventh claim for relief, Petitioner challenges his conviction for capital murder and resulting death sentence on the ground that the State failed to prove beyond a reasonable doubt that Petitioner committed the single aggravating circumstance that made him death-eligible. (Doc. # 16, at ¶¶ 89-98.) Explaining that the indictment contained only one death penalty specification–namely, that the offense at bar was part of a course of conduct involving the purposeful killing of or attempt to kill two or more persons by the offender–Petitioner asserts that he never had the intent to shoot two persons. Petitioner also argues that the Ohio Supreme Court erred in finding that he had waived the claim by failing to raise it at trial because; citing Tr.2027-28, Petitioner insists that defense counsel moved to dismiss the death penalty specification and that the trial court denied the motion. (*Id*. at ¶ 96.) Petitioner also argues without citation that "it is not possible to default a sufficiency of the evidence claim." (*Id*.)

Respondent argues that Petitioner defaulted this claim when he failed to assert a contemporaneous objection at trial to the alleged error. (Doc. # 25, at 13-14.) Beyond procedural default, Respondent argues that this Court should dismiss Petitioner's claim because

Petitioner failed to cite the Supreme Court precedent on which he basis this claim and because the claim is meritless.  (*Id*. at 15.)  Because this Opinion and Order addresses only procedural default, the Court **DENIES** the latter two arguments as not properly before it.

In response to Respondent's procedural default argument, Petitioner insists that he did not violate the contemporaneous objection rule because the Ohio Supreme Court's finding otherwise related to the transferred intent jury instruction given to the jury, <u>not</u> to the underlying sufficiency of the evidence challenge.   (Doc. # 26, at 17-18.)  Petitioner points out that the Ohio Supreme Court went on to reject Petitioner's claim on the merits, finding that the evidence was sufficient to support the "course of conduct" aggravating circumstance.

The only argument that Respondent offers in reply is his argument that claims not based on clearly established Supreme Court precedent cannot support habeas corpus relief under 28 U.S.C. § 2254(d)(1).  (Doc. # 27, at 5-6.)

Review of the transcript confirms Petitioner's assertion that he preserved a claim challenging the sufficiency of the evidence supporting his conviction for the lone aggravating circumstances that made him death-eligible when defense counsel moved pursuant to Ohio R. Crim. P. 29 to dismiss that aggravating circumstance.  (Tr. Vol. 11, at 2027-28.)  Sorting out whether Petitioner *actually* fairly presented the sufficiency of the evidence challenge that he now seeks to present in his eleventh claim for relief is not nearly so straightforward.  To be clear, the only procedural default argument that Respondent raised against Petitioner's eleventh claim for relief was that Petitioner failed to assert a contemporaneous objection.  But this Court is not precluded from noting *sua sponte* a procedural default that Respondent failed to raise, *see, e.g.,*

*Trest v. Cain*, 522 U.S. 87, 89 (1997) (stating that courts are neither required to raise, nor precluded from raising, procedural default *sua sponte*).

Although, as noted above, review of the transcript confirms that Petitioner preserved a sufficiency of the evidence challenge at trial with a Rule 29 motion for acquittal, review of his brief on direct appeal leaves this Court wondering whether he actually presented a sufficiency of the evidence challenge on direct appeal. The confusion stems from the fact that Petitioner styled his claim challenging his conviction for the lone aggravating circumstance–not as a sufficiency of the evidence claim–but as a jury instruction claim. It bears reminding that satisfying the fair presentment requirement entails not only presenting a claim to the state courts as a federal constitutional claim, but also presenting that claim to the state courts under the same facts <u>and</u> legal theories that the petitioner seeks to present in habeas corpus. Although a certain degree of tinkering is permissible, a petitioner does not fairly present a claim if he presents an issue to the state courts under one legal theory and set of facts, and then presents the issue to the federal courts under a different legal theory or a different set of facts. *See, e.g., Lott v. Coyle*, 261 F.3d 594, 607 (6th Cir. 2001) (finding that relatedness of claim of involuntary jury waiver to claim of failure of trial court to follow statutory requirements for effectuating valid jury waiver was not enough to preserve the former for habeas review).

In the instant case, Petitioner's defense counsel did in fact preserve a sufficiency of the evidence challenge as to the only capital specification with which Petitioner was charged by raising at the close of the State's case in chief a Rule 29 motion for acquittal. (Tr. Vol. 11, at 2027-28.) On direct appeal to the Ohio Supreme Court, however, the only challenge that Petitioner made against that capital specification–in his eleventh proposition of law–was styled

less as a sufficiency of the evidence challenge than as a jury instruction challenge. Petitioner styled the heading of his eleventh proposition of law as follows: "When the jury is instructed on transferred intent regarding the aggravating circumstance, and the trial court finds the transferred intent applies to this specification, the conviction on the specification cannot stand since evidence shows a singular purpose, contra the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the Constitution." (App. Vol. 6, at 109.) Petitioner went on to argue:

In the court's charge to the jury, after giving the instruction on transferred intent, the trial court also stated to the jury that this doctrine also applies with respect to the one specification, i.e. the court of conduct, under R.C. 2929.04(A)(5). (T - 2646-48).

Later on in the trial, the court also noted for the record that the murderous intent was transferred to Jason Gervais. (T - 2899).

Previously, defense counsel had moved to dismiss the death penalty specification pursuant to Rule 29, and the trial court had denied this motion. (T - 2027-28).

Under the facts of this case presented by the prosecution, this was an improper ruling on the part of the trial court, because of how the jury was instructed, with respect to the "course-of-conduct" specification.

In order to be found responsible for a course-of-conduct specification, the facts must show that the accused was cognizant of more than a singular purpose in his actions.

There have been several cases from this Court that have reviewed course-of-conduct specifications, but have not raised this specific issue.

In State v. Beuke (1988), 38 Ohio St. 3d 29, 526 N.E.2d 274, there was one aggravated murder and two attempted murders, each occurring separately.

This Court affirmed, holding that the course of conduct specification was supported by the evidence presented, Beuke at 43.

Then, in State v. Benner (1988), 40 Ohio St. 3d 301, 533 N.E.2d 701, the issue of course of conduct specification was detailed by this Court.

Specifically at 305, this Court stated that "*** it is clear that no one could reasonably believe that every murder is 'part of a course of conduct involving the purposeful killing of or attempt to kill two or more persons by the offender.' Thus, we find that the specification in R.C. 2929.04(A)(5) does not give the sentencing court the wide discretion condemned in both Godfrey [(1980) 446 U.S. 420, 100 S.Ct. 1759] and Maynard [(1988) 486 U.S. 356]. Therefore, we hold that the course-of-conduct specification is not void for vagueness under either the Eighth Amendment to the United States Constitution of Section 9, Article I of the Ohio Constitution. The language of the statute is definitive and is circumscribed to cover only those situations which it fairly describes."

This Court is well aware of those capital cases regarding the Eighth Amendment, whose purpose is to channel the jurors' discretion.

In the present case, the trial court, in defining the specification, narrowed it so that only a singular purpose could be found by the jury. If intent is transferred as are the facts in this case, it is legally impossible to the culpable of both. Put another way, all of the intent and/or purpose was transferred.

As a result, the trial court erred in overruling the motion to dismiss the death penalty specification, and as a result, the case must be reversed and remanded for appropriate relief.

(App. Vol. 6, at 109-12.)

In his habeas corpus petition, it is unambiguous that Petitioner seeks to challenge the sufficiency of the evidence supporting his conviction on the lone aggravating circumstance that made him death-eligible. Asserting that his intent to shoot one person, even if transferable to another, does not establish that he intended to shoot two persons, Petitioner argues that "the [S]tate could not have proven beyond a reasonable doubt that Petitioner had the requisite purpose to kill two or more persons as alleged in the single aggravating circumstance." (Doc. # 16, at ¶ 95.) Although that argument is clear enough, this Court is of the view that, at best, Petitioner only scattered hints of a sufficiency of the evidence challenge in the proposition of law that he raised on direct appeal. It test the limits of credulity to believe that that proposition of law put the Ohio Supreme Court on fair notice that Petitioner was raising a sufficiency of the evidence

challenge to his conviction for the course-of-conduct aggravating circumstance. For that reason, and in spite of Respondent's failure to raise a fair presentment challenge, this Court might be inclined to conclude that Petitioner waived his eleventh claim for relief by failing to fairly present that claim to the state courts under the same legal theory (sufficiency of the evidence) that he seeks to present to this Court. But the hints of a sufficiency of the evidence challenge inartfully scattered in Petitioner's eleventh proposition of law, combined with the Ohio Supreme Court's treatment of that proposition of law, save it from waiver.

In spite of the fact that Petitioner presented his claim to the Ohio Supreme Court as more of a jury instruction challenge than a sufficiency of the evidence challenge–two legally distinct challenges, it goes without saying–the Ohio Supreme Court understandably construed the claim as a jury instruction challenge, but in rejecting that jury instruction challenge, nonetheless still managed to conclude that there was sufficient evidence to support Petitioner's conviction for the course-of-conduct aggravating circumstance. The Ohio Supreme Court ruled as follows:

> In proposition of law 11, Conway asserts that the trial court erred in instructing the jury that the doctrine of transferred intent also applied with respect to the R.C. 2929.04(A)(5) aggravating circumstance. As Conway argues, this instruction permitted the jury to convict him of the R.C. 2929.04(A)(5) course-of-conduct specification even if the jury believed he had a purpose to kill only one person (Williams).

> Under R.C. 2929.04(A)(5), the death penalty may be imposed for aggravated murder if the state proves beyond a reasonable doubt that "the offense at bar was part of a course of conduct involving the purposeful killing of or attempt to kill two or more persons by the offender." Conway failed to object on this basis at trial, however, and waived all but plain error. We find no plain error.

> Conway contends that it would be legally impossible for him to be guilty of the purposeful killing of or attempt to kill two or more persons if the jury believed that he did not actually intend to kill Gervais.

Even disregarding the doctrine of transferred intent, the jury had overwhelming evidence that Conway had a purpose to kill Gervais. "It is a fundamental principle that a person is presumed to intend the natural, reasonable and probable consequences of his voluntary acts." *State v. Johnson* (1978), 56 Ohio St.2d 35, 39 10 O.O.3d 78, 381 N.E.2d 637. Intent is gathered from the surrounding facts and circumstances. *Id.* at 38, 10 O.O.3d 78, 381 N.E.2d 637; *State v. Lott* (1990), 51 Ohio St.3d 160, 168, 555 N.E.2d 293. As previously discussed, Conway armed himself with a loaded firearm and fired eight shots, with the final shots fired from close range at defenseless victims. *With this evidence, no reasonable jury could have found that Conway did not purposely intend to kill both Williams and Gervais. The jurors were also instructed that if they found that the state had failed to prove beyond a reasonable doubt any part of the course-of-conduct specification, they must find Conway not guilty of the specification.* Therefore, we reject proposition of law 11.

*Conway*, 108 Ohio St. 3d at 240-41; (App. Vol. 7, at 288) (emphasis added).

The foregoing persuades that Court that it is not necessary to fault Petitioner for his arguable failure to fairly present to the Ohio Supreme Court the substance of the sufficiency of the evidence challenge that he seeks to present to this Court in his eleventh claim for relief. The Court now turns its attention to Respondent's argument that Petitioner defaulted his eleventh claim for relief by failing to assert a contemporaneous objection at trial. Notwithstanding Petitioner's arguable failure to fairly present his eleventh claim for relief to the Ohio Supreme Court, it cannot be said that he failed to assert a contemporaneous objection as argued by Respondent.

Having reviewed the various portions of the transcript in which the jury instructions were discussed on the record, this Court could find no instance in which Petitioner's defense counsel asserted a contemporaneous objection to any aspect of the trial court's jury instructions concerning the lone aggravating circumstance or the applicability of transferred intent to that aggravating circumstance. (Tr. Vol. 15, at 2527-30; 2630-35; 2646-47; 2659-60; 2668-69.) Thus, were Petitioner seeking to challenge those aspects of the trial court's jury instructions, the

Court would agree with Respondent that Petitioner had violated Ohio's contemporaneous objection rule and further find that the Ohio Supreme Court had enforced that rule. But Petitioner does not present a jury instruction challenge concerning the aggravating circumstance for which he was convicted; rather, he presents a sufficiency of the evidence challenge to that aggravating circumstance. And he preserved that challenge when his defense counsel moved pursuant to Ohio R. Crim. P. 29 to dismiss that aggravating circumstance for want of sufficient evidence to sustain it. *See, e.g., State v. Roe*, 41 Ohio St. 3d 18, 25 (1989). Further, careful scrutiny of the Ohio Supreme Court's decision confirms Petitioner's assertion that the court enforced the contemporaneous objection rule as to only Petitioner's failure to object to the jury instructions at issue, not to any sufficiency of the evidence challenge that Petitioner inartfully argued. *Conway*, 108 Ohio St. 3d at 240-41; (App. Vol. 7, at 288). Thus, the Court concludes that Petitioner did not violate Ohio's contemporaneous objection rule as to the sufficiency of the evidence challenge set forth in his eleventh claim for relief and that the Ohio Supreme Court did not enforce any such violation. Respondent's argument failing the first two parts of the *Maupin* test, the Court rejects Respondent's argument that Petitioner defaulted his eleventh claim for relief.

For the foregoing reasons, the Court **DENIES** Respondent's motion to dismiss Petitioner's eleventh claim for relief as procedurally defaulted.

I.     <u>Twelfth Claim for Relief</u>: **Petitioner's death sentence is constitutionally infirm because it was returned by a jury which had been contaminated by an outside influence.**

In his twelfth claim for relief, Petitioner argues that his death sentence is tainted by juror misconduct. Specifically, Petitioner points to an incident that occurred and was brought to the

trial court's attention just before the start of the mitigation hearing in which an alternate juror (Ms. Benedetti) purportedly discussed with a regular juror (Ms. Guisinger) how she (Ms. Benedetti) would have voted at the conclusion of the trial phase. (Doc. # 16, at ¶¶ 99-107.)

Respondent urges the Court to dismiss Petitioner's claim on several grounds. (Doc. # 25, at 14-16.) First, according to Respondent, Petitioner did not present to the Ohio Supreme Court the substance of the claim he seeks to present here–namely, that the failure to remove Juror Guisinger in addition to Alternate Juror Benedetti rendered the resulting death sentence unconstitutional. Respondent argues that on appeal to the Ohio Supreme Court, Petitioner argued only that the trial court erred in not granting a mistrial. Second, Respondent argues that Petitioner failed to assert a contemporaneous objection when the trial court decided to keep Juror Guisinger on the panel. Finally, beyond procedural default, Respondent argues that Petitioner failed to cite the Supreme Court precedent upon which he bases his claim and that this claim is meritless. Because this Opinion and Order addresses only procedural default, the Court **DENIES** the last two arguments as not properly before it.

Petitioner disputes Respondent's argument that he failed to fairly present to the state courts the same aspects of the claim that he seeks to present to this Court, arguing that Respondent's efforts to dissect the claim into different issues–one challenging the failure to grant a mistrial and one challenging the continued presence of Juror Guisinger on the panel–is unavailing. (Doc. # 26, at 19-20.) Petitioner reasons that because the continued presence of Juror Guisinger on the panel provided the underlying basis for his motion for a mistrial, the claim that he seeks to present now in habeas corpus is the same as the claim that he presented on direct appeal to the Ohio Supreme Court. Petitioner also disputes Respondent's argument that

Petitioner's failure to assert a contemporaneous objection operates as a procedural bar, arguing that the Ohio Supreme Court did not identify or enforce any such default and reviewed the claim on the merits. (*Id.* at 19.)

In his reply, Respondent argued that a petitioner does not satisfy the "fair presentment" requirement by presenting to the state courts a claim that is similar or related to the claim that the petitioner seeks to present in habeas corpus. Rather, according to Respondent, "[a] state court has to be fairly presented with the exact claim." (Doc. # 27, at 8 (citing *Wilks v. Israel*, 627 F.2d 32, 38 (7th Cir. 1980).)

### 1. Fair Presentment.

The Court turns first to Respondent's argument that Petitioner failed to fairly present his twelfth claim for relief because he failed to present to the Ohio Supreme Court the same juror misconduct claim that he seeks to present to this Court. By way of reminder, satisfying the fair presentment requirement entails not only presenting a claim to the state courts as a federal constitutional claim, but also presenting that claim to the state courts under the same legal theories <u>and</u> facts that the petitioner seeks to present in habeas corpus. Although a certain degree of tinkering is permissible, a petitioner does not fairly present a claim if he presents an issue to the state courts under one legal theory and set of facts, and then presents the issue to the federal courts under a different legal theory or a different set of facts. *See, e.g., Lott v. Coyle*, 261 F.3d at 607.

In his petition, Petitioner argues that his conviction and death sentence were tainted because of improper communications between Juror Guisinger and Alternate Juror Benedetti and Juror Guisinger's continued presence on the jury. (Doc. # 16, at ¶¶ 99-107.) Petitioner

presented this claim on direct appeal to the Ohio Supreme Court as his twentieth proposition of law. He styled the heading as follows: "The trial court commits prejudicial error in denying a motion for mistrial between the [trial] and mitigation phases of the trial, where the record reveals a juror had discussed sentencing with an alternate, contra the Sixth, Eighth[,] and Fourteenth Amendments to the Constitution." (App. Vol. 6, at 153.) Petitioner went on to set forth the facts concerning the substance of the improper communications between Juror Guisinger and the alternate juror in arguing that the trial court had erred in failing to grant a mistrial on the basis of Juror Guisinger's conduct. (*Id.*, at 154.) Petitioner then cited various federal and state decisions[3] addressing the standards for removing a juror when there are allegations that the juror had engaged in improper communications. (*Id.*, at 155-56.) Petitioner concluded the body of his argument by asserting that there was improper communication between Juror Guisinger and an alternate, that he was prejudiced by the continued presence of Juror Guisinger on the panel (due to the substance of the alternate's remark to Juror Guisinger that the alternate would not have voted guilty), and that the trial court accordingly erred by refusing to declare a mistrial. (*Id.*, at 156-57.) The Court is satisfied that Petitioner fairly presented to the Ohio Supreme Court on direct appeal the substance of the claim that he seeks to present to this Court for habeas corpus review.

Respondent argues that the focus of Petitioner's argument to the Ohio Supreme Court was the failure of the trial court to grant a mistrial, while the focus of Petitioner's argument to

---

[3]     Petitioner cited, in order: *State v. Murphy*, 65 Ohio St. 3d 554 (1992); *Remmer v. United States*, 347 U.S. 227 (1954); *Mattox v. United States*, 146 U.S. 140 (); *Wheaton v. United States*, 133 F.2d 522, 527 (); *State v. Jenkins*, 15 Ohio St. 3d 164, 236-37 (1984); *State v. Hessler*, 90 Ohio St. 3d 108 (2000); *State v. Phillips*, 455 U.S. 209, 215 (1982); *United States v. Olano*, 507 U.S. 725, 738 (1993); and *United States v. Sylvester*, 143 F.3d 923, 934 (5th Cir. 1998).

this Court is the trial court's decisions to remove Alternate Juror Benedetti and retain Juror Guisinger. This Court is of the view that those issues are inextricably intertwined and that Petitioner squarely placed before the Supreme Court for review the issue of Juror Guisinger's conduct and continued presence on the jury. The very heading of his proposition of law included reference not only to the trial court's refusal to grant a mistrial but also to the misconduct of both a regular juror and an alternate juror. Petitioner explicitly and repeatedly asserted Juror Guisinger's misconduct and continued presence on the jury panel as the basis of his motion for mistrial and claim that the trial court had erred in failing to grant a mistrial. The case law upon which Petitioner relied involved improper communications with or between members of the jury. Finally, as noted above, Petitioner argued in no uncertain terms that there was improper communication between Juror Guisinger and an alternate, that he was prejudiced by the continued presence of Juror Guisinger on the panel (due to the substance of the alternate's remark to Juror Guisinger that the alternate would not have voted guilty), and that the trial court accordingly erred by refusing to declare a mistrial. For the foregoing reasons, the Court rejects Respondent's argument that Petitioner presented his twelfth claim to the state courts under one set of facts and legal theory–the trial court's failure to declare a mistrial–while presenting his claim to this Court under another set of facts and legal theory–Juror Guisinger's continued presence on the jury panel after Alternate Juror Benedetti was removed–sufficient to defeat fair presentment.

## 2. Contemporaneous Objection Rule.

The Court turns now to Respondent's argument that Petitioner defaulted his twelfth claim for relief by failing to assert a contemporaneous objection at trial. Petitioner counters that any

failure on his part to assert a contemporaneous objection does not operate as a procedural bar because the Ohio Supreme Court never identified or enforced such a violation and instead rejected Petitioner's claim on the merits. Petitioner's argument is well taken.

As noted above, Petitioner presented this claim to the Ohio Supreme Court in his twentieth proposition of law. Review of the Ohio Supreme Court's decision reveals that the court clearly rejected Petitioner's claim on the merits and nowhere mentioned, much less enforced, any failure on Petitioner's part to assert a contemporaneous objection at trial. *Conway*, 108 Ohio St. 3d at 243-45; (App. Vol. 7, at 290-91). In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d at 138. Under the second part of the *Maupin* test, violation of a state procedural rule will not preclude habeas corpus review unless the state courts actually enforced the procedural rule. *Harris v. Reed*, 489 U.S. at 261-62. That being so, regardless of whether Petitioner may have failed to assert a contemporaneous objection at trial concerning the trial court's decisions not to declare a mistrial and/or to keep Juror Guisinger on the panel, the fact remains that the Ohio Supreme Court did not actually enforce any such violation. Respondent's argument accordingly fails the second part of the *Maupin* test.

### 3. Conclusion.

For the foregoing reasons, the Court **DENIES** Respondent's motion to dismiss Petitioner's twelfth claim for relief as procedurally defaulted.

**J.** <u>**Thirteenth Claim for Relief**</u>**: Petitioner's death sentence is constitutionally infirm because the trial court precluded Petitioner from retaining new counsel prior to the mitigation phase.**

Petitioner attempted to retain new counsel prior to commencement of the mitigation phase. He argues in his thirteenth claim for relief that the trial court's refusal to grant his motion to substitute counsel (and for a continuance) rendered his resulting death sentence unconstitutional. (Doc. # 16, at ¶¶ 108-15.)

Respondent raises three arguments in support of his motion to dismiss Petitioner's claim, only one of which alleges procedural default. (Doc. # 25, at 16-18.) First, Respondent argues that Petitioner waived this claim by failing to fairly present it to the state courts as a federal constitutional claim. Beyond procedural default, Respondent also urges the Court to dismiss claim thirteen because Petitioner failed to cite the United States Supreme Court precedent upon which he bases his claim and because the claim is without merit. Because this Opinion and Order addresses only procedural default, the Court **DENIES** the last two arguments as not properly before it.

In regard to Respondent's lone procedural default argument, Petitioner argues the he "specifically cited the Sixth, Eighth and Fourteenth Amendments in raising this claim in the Ohio Supreme Court, and also cited several federal decisions, including the decision of the United States Supreme Court in *Morris v. Slappy*, 461 U.S. 1 (1983)." (Doc. # 26, at 20-21.)

The only arguments that Respondent offers in reply are his arguments that cursory mentions of federal law are insufficient to constitute fair presentment and that claims not based on clearly established Supreme Court precedent cannot support habeas corpus relief under 28 U.S.C. § 2254(d)(1). (Doc. # 27, at 2-6.)

In addressing the issue as to whether Petitioner fairly presented his thirteenth claim for relief to the state courts as a federal constitutional claim, the Court reiterates that, in the Sixth

Circuit, a Petitioner can satisfy the fair presentment claim in one of four manners: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *McMeans*, 228 F.3d at 681. Further, general allegations of the denial of constitutional rights, such as the rights to a fair trial or due process, are insufficient to satisfy the "fair presentment" requirement. *Id.*

Petitioner presented this issue to the Ohio Supreme Court in his fifteenth proposition of law. He styled the heading as follows: "A trial court commits prejudicial error in refusing a continuance at the outset of mitigation, when the record shows efforts at retaining fresh counsel, contra the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the Constitution." (App. Vol. 6, at 127.) The Court has observed already that the mere mention of constitutional amendments does not appear to qualify as one of the four methods set forth by the Sixth Circuit for satisfying the fair presentment requirement. Thus, the Court must look further.

The language and case law that the Ohio Supreme Court employed in its decision rejecting Petitioner's claim persuade this Court that Petitioner fairly presented his thirteenth claim to the state courts as a federal constitutional claim. Any difficulty in discerning whether Petitioner fairly presented his claim stems from the fact that his claim is a hybrid claim combining two issues, one of which (motion for a continuance) is governed by state standards and state cases and the other of which (motion for new counsel) involves decisions employing federal constitutional analysis, terms sufficiently particular to allege the denial of a specific constitutional right, and facts within the mainstream of federal constitutional law. Those issues

were so inextricably intertwined that the Ohio Supreme Court was put on fair notice that Petitioner was alleging deprivation of federal constitutional rights.

The Court rejects Respondent's argument that Petitioner made only cursory mention of federal law while providing substantive argument based on Ohio law. Although the component of Petitioner's argument challenging as error the trial court's refusal to grant a continuance relied on and was decided on the basis of state cases employing state standards (App. Vol. 6, at 127-29), the component of Petitioner's claim challenging the trial court's refusal to grant Petitioner new counsel and/or a continuance to obtain new counsel involved more than just cursory mention of federal law. Petitioner not only relied on federal and state decisions employing federal constitutional analysis–*Morris v. Slappy*, 461 U.S. 1 (1983); *State v. Williams (Robert)*, 99 Ohio St. 3d 439, 449 (2003); and *State v. Williams (Shawn)*, 99 Ohio St. 3d 493, 512 (2003)–but also discussed terms, facts, and rights that fall squarely within the mainstream of federal constitutional law (App. Vol. 6, at 129-32). Petitioner argued with specificity and at length that although federal constitutional law did not entitle him to his counsel of choice, the fact remains that a breakdown in communications between Petitioner and his defense attorneys operated to deny him his right to effective assistance of counsel.

That Petitioner gave fair notice to the Ohio Supreme Court of the federal constitutional dimension to his claim is evident in the Ohio Supreme Court's decision rejecting Petitioner's claim, insofar as it employed even more federal constitutional law and language within the mainstream of constitutional litigation. The Ohio Supreme Court began its analysis of Petitioner's claim by setting forth the (state) standard governing the determination of whether to grant a continuance and by noting (as a matter of state and federal decisions) that an indigent

defendant has no right to his counsel of choice. The Ohio Supreme Court went on to address

Petitioner's claim concerning the trial court's denial of Petitioner's request for new counsel in

terms unmistakably and almost exclusively within the lexicon of constitutional analysis:

>Conway informed the trial court that his chief complaint about his attorneys was their failure to do specific things that he requested. Conway complained that trial counsel had ignored his wishes to show the surveillance tape of the Dockside parking lot on the night of the shooting and had refused to call Britnee Stallings, Conway's girlfriend, as a defense witness. He also complained that he had not been allowed to attend jury-instruction conferences. (See discussion in proposition of law three.)

>Disagreements between attorney and client over trial strategy do not warrant substitution of counsel. See, e.g., *State v. Henness* (1997), 79 Ohio St. 3d 53, 65-66, 1997 Ohio 405, 679 N.E.2d 686; *State v. Hill*, 75 Ohio St. 3d at 212, 661 N.E.2d 1068 ("trial courts cannot interfere with counsel's trial tactics or representation of their clients"). Defendants have no constitutional right to determine strategy, and decisions about viable defenses are "within the exclusive province of defense counsel to make after consultation with his client." *State v. Murphy* (2001), 91 Ohio St. 3d 516, 524, 2001 Ohio 112, 747 N.E.2d 765, quoting *Lewis v. Alexander* (C.A.6, 1993), 11 F.3d 1349, 1354.

>Conway makes no claim that defense counsel failed to discuss strategy concerning presentation of evidence or the calling of witnesses. Conway does not demonstrate a complete breakdown in the attorney-client relationship that jeopardized his right to the effective assistance of counsel. See *State v. Coleman* (1988), 37 Ohio St. 3d 286, 525 N.E.2d 792, paragraph four of the syllabus; *State v. Murphy*, 91 Ohio St. 3d at 523-524, 747 N.E.2d 765. In fact, the record reflects that defense counsel and Conway were engaged in discussions about his mitigation.

>Furthermore, Conway has not demonstrated that trial counsel's failure to introduce the surveillance tape or call Britnee Stallings as a witness was unreasonable trial strategy. See *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Defense counsel explained that the surveillance tape had little to no value to the defense because it recorded only the order in which people had arrived at the bar and did not record the fight of the shooting. With respect to Britnee Stallings, Conway wanted her called as a witness to establish that he was not carrying a weapon when he arrived at Dockside. That fact was not disputed. Defense counsel also exercised sound strategy in not calling Stallings, because she had served as conduit to conversations between

> Conway and [jailhouse informant] Trent, the government's agent, and her
> testimony might have been damaging to Conway's defense. * * *

*Conway*, 108 Ohio St. 3d at 242-43; (App. Vol. 7, at 288-89.)  Analysis of whether or to what

extent disagreements over strategy or a breakdown in communications deprived Petitioner of the

effective assistance of counsel under the two-part standard set forth in *Strickland v. Washington*,

involves federal constitutional analysis.  Respondent will not be heard to argue otherwise.

Although a state court's addressing a claim as a federal constitutional claim is

determinative in an inquiry whether a petitioner fairly presented to the state courts a claim that

he seeks to present in federal habeas corpus, the Court is persuaded in the instant case that that

fact bolsters the Court's conclusion that Petitioner fairly presented his thirteenth claim for relief

as a federal constitutional claim.  In fact, it could be argued from a reading of how the Ohio

Supreme Court construed the claim that it would have been difficult for the Ohio Supreme Court

to rule on the components of Petitioner's claim without employing federal constitutional

analysis.  Under these circumstances, any argument that Petitioner failed to fairly present his

thirteenth claim for relief, just because it necessarily included a component (challenging the trial

court's refusal to grant a continuance) relying on state cases and state standards is without merit.

For the foregoing reasons, the Court rejects Respondent's argument that Petitioner failed

to fairly present his thirteenth claim for relief as a federal constitutional claim and **DENIES**

Respondent's motion to dismiss claim thirteen as procedurally defaulted.

**K.**     **Fourteenth Claim for Relief: Petitioner's death sentence is constitutionally
        infirm because the trial court instructed the jury that it had to reach
        unanimity to return a life verdict.**

Petitioner argues in his fourteenth claim for relief that the trial court erred when it

provided the jury with a verdict form that said: "We the jury, having reached a deadlock on

69

whether or not the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt, hereby unanimously recommend the following life sentence on count one (check one)." (Doc. # 16, at ¶ 118.) Petitioner reasons that such instructions preclude individual jurors from giving full effect to a defendant's mitigation or mislead the jury about the weighing process by telling jurors to first consider a death verdict before considering a life verdict. (*Id*. at ¶¶ 116-20.)

Respondent raises only one procedural default defense against Petitioner's claim, arguing that he defaulted the claim by failing to preserve it at trial with a contemporaneous objection rule. (Doc. # 25, at 18.) Respondent also argues that Petitioner's claim is meritless, but because this Opinion and Order addresses only procedural default, the Court **DENIES** the latter argument as not properly before it.

In response, Petitioner concedes that he failed to assert a contemporaneous objection at trial, but argues that his failure will not operate as a procedural bar if he demonstrates cause and prejudice to excuse the default. (Doc. # 26, at 21-22.) Suggesting that ineffective assistance of trial counsel constitutes cause and prejudice but arguing that deciding the merits of that cause and prejudice argument will require this Court to address the merits of the underlying unanimity instruction claim, Petitioner urges the Court to defer any procedural default ruling until after Petitioner submits his merits briefing.

The only argument that Respondent offers in reply is his argument that this Court should not defer its procedural default ruling because it is not necessary to evaluate the merits of a claim in order to determine whether it is procedurally defaulted and because Petitioner had an

opportunity to make any cause and prejudice arguments.  (Doc. # 27, at 6-7 (citing *Scott v. Mitchell*, 209 F.3d at 872).)

Out of an abundance of caution, the Court will entertain in its final decision addressing the merits of Petitioner's claims any <u>good</u> <u>faith</u> cause and prejudice arguments Petitioner might offer to preserve his fourteenth claim for relief, such as a <u>colorable</u> claim of ineffective assistance of trial counsel.

Because the Court has not yet made a determination of whether cause and prejudice might excuse the apparent default of Petitioner's fourteenth claim for relief, the Court cannot conclude that Petitioner's fourteenth claim for relief is procedurally defaulted.  The Court accordingly **DENIES** Respondent's motion to dismiss claim fourteen, subject to reconsideration once the Court considers any good faith, colorable cause and prejudice arguments that Petitioner might offer.

**L.** **<u>Fifteenth Claim for Relief</u>: Petitioner's convictions and sentences are constitutionally infirm because he was denied the right to effective assistance of counsel with respect to all stages of the proceedings in the trial court.**

Petitioner argues that his trial attorneys performed deficiently and to his prejudice: (A) by failing to conduct a reasonable trial phase investigation; (B) by failing to retain necessary experts for the trial phase; (C) by conducting an unreasonable *voir dire*; (D) by performing unreasonably in the trial phase presentation; (E) by conducting an unreasonable mitigation investigation: (F) by failing to retain necessary mitigation experts; (G) and by performing unreasonably in the mitigation phase.  (Doc. # 16, at ¶¶ 116-63.)

Respondent raises procedural default arguments against paragraphs 124, 125, 127-28, and 130 of sub-part (A); paragraphs 139-41 of sub-part (C); and paragraph 146 of sub-part (D). The Court will address each argument, as well as Petitioner's responses thereto, separately.

**1. <u>Sub-part (A)</u>: Failure To Conduct Reasonable Trial Phase Investigation.**

Asserting that trial counsel at a minimum had to interview the State's witnesses and identify witnesses for the defense case-in-chief, Petitioner argues in sub-part (A) that his trial attorneys conducted an unreasonable trial phase investigation by failing to prepare adequately to cross-examine state informant Ronald Trent (¶¶ 124-25); by failing to investigate and present testimony by Gary Hall and David Baker (¶¶ 127-28); by failing to utilize the surveillance video to buttress the credibility of Petitioner and his brother, as well as undermine the credibility of state witnesses Troy Ankrum and Ronald Trent (¶ 129); and by failing to provide the pretrial discovery necessary to allow for the testimony of an accident reconstruction expert (¶ 130).

Respondent argues that the allegation in paragraph 125 accusing the prosecution of causing ineffective assistance of counsel by failing to provide defense counsel with a copy of Ronald Trent's May 26, 2002 interview/statement is barred under Ohio's doctrine of *res judicata* because Petitioner raised it in postconviction proceedings instead of on direct appeal. (Doc. # 25, at 19.) This procedural default issue concerns Petitioner's argument that defense counsel were unprepared to cross-examine Ronald Trent concerning Trent's testimony that Petitioner had claimed that he continued firing at Mandel Williams even after Williams pulled Jason Gervais in front of him as a shield because he (Petitioner) knew that a .45 caliber bullet would travel through both Gervais and Williams because defense counsel were not aware that Trent would testify as such.

Petitioner argues that his raising that claim in postconviction instead of on direct appeal did not violate Ohio's *res judicata* rule because the issue involved matters not reflected on the trial record. Specifically, Petitioner argues that the trial record does not reflect whether the State was in possession of Trent's statement or the reasons why defense counsel were unaware of Trent's statement. (Doc. # 26, at 22-23.) The only argument that Respondent offers in reply is that it is not the province of a federal habeas court to determine whether the Ohio courts erred in applying Ohio's *res judicata* rule against Petitioner's claim. This Court emphatically disagrees.

Although generally it is not within the province of a federal court to determine whether a state court misapplied a state law for purposes of granting habeas corpus relief, *see Estelle v. McGuire*, 502 U.S. 62 (1991); *see also Giles v. Schotten*, 449 F.3d 698, 704 (6th Cir. 2006), the very language of the Sixth Circuit's *Maupin* decision makes clear that it is exclusively within the province of a federal habeas corpus court to determine whether a state court misapplied a state procedural rule for purposes of enforcing procedural default in habeas corpus. By way of reminder, *Maupin* states: "First, the (federal district) court must decide that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Maupin v. Smith*, 785 F.2d at 138. Nowhere in *Maupin* does the Sixth Circuit state or even suggest that the district court should simply accept the state court's determination that a state procedural rule was applicable and that the petitioner failed to comply with the rule. In *Greer v. Mitchell*, 264 F.3d 663 (6th Cir. 2001), the Sixth Circuit emphasized this point as follows:

> Generally, a federal habeas court sitting in review of a state-court judgment should not second guess a state court's decision concerning matters of state law. (citation omitted). Nevertheless, when the record reveals that the state court's reliance upon its own procedural default is misplaced, we are reluctant to

conclude categorically that federal habeas review of the purportedly defaulted claim is precluded.

*Id*. at 675. With these principles in mind, the Court turns its attention to the issue of whether Petitioner violated Ohio's doctrine of *res judicata* by raising the trial counsel ineffectiveness claim described above in postconviction instead of on direct appeal.

The first part of the *Maupin* test requires the Court to determine whether a state procedural rule was applicable to petitioner's claim, and, if so, whether petitioner violated that rule. As noted *supra*, claims appearing on the face of the record must be raised on direct appeal or they will be waived under Ohio's doctrine of *res judicata*. *State v. Perry*, 10 Ohio St. 2d 175. Claims that involve matters outside the record must be raised and supported by evidence *dehors* the record in state postconviction proceedings. In determining whether *res judicata* applies to a constitutional claim, the inquiry is properly focused on whether the claim genuinely relies on and is supported by evidence that was not a matter of record. *State v. Cole*, 2 Ohio St. 3d 112. Thus, non-record evidence submitted during postconviction proceedings to support a constitutional claim cannot be superfluous or cumulative to the evidence of record; rather, that evidence must genuinely support the claim in a manner that no record evidence could. *See State v. Powell*, 90 Ohio App. 3d 260, 268 (Ohio App. 1 Dist. 1993) (holding that additional evidence offered in postconviction to support claim of trial counsel ineffectiveness during mitigation was merely cumulative to evidence presented at trial).

In the instant case, the precise claim at issue is that defense counsel failed to prepare adequately to cross-examine Ronald Trent concerning Trent's testimony that Petitioner had told Trent in jail that Petitioner continued shooting at Mandel Williams even after Williams pulled Jason Gervais in front him because Petitioner knew a .45 bullet would go through both of them.

(Doc. # 16, at ¶ 125.)  Petitioner argues that because defense counsel conducted an unreasonable investigation (or because the prosecution failed to disclose that aspect of Trent's testimony), Trent's testimony caught defense counsel by surprise.  Petitioner argues that had counsel conducted a reasonable investigation, they would have been aware of the statement and prepared accordingly.  Petitioner argues in the alternative that counsel's ineffective assistance in this regard was caused by prosecutorial misconduct–namely, the prosecution's failure to provide defense counsel with Trent's May 26, 2002 interview, with Detectives Zach Scott and Chris Floyd during which, according to Petitioner, Trent made that statement.  Petitioner argues he could not have raised this claim on direct appeal and was accordingly required to raise it in postconviction because "the record on direct review was inadequate to determine the reasons defense counsel were unprepared to cross examine Trent" and "[t]he direct appeal record does not disclose that the State was in possession of Trent's statement."  (Doc. # 26, at 23.)

The testimony by Ronald Trent for which defense counsel were unprepared, according to Petitioner, because of either counsel's failure to investigate or the prosecution's failure to disclose the statement, was as follows.  On direct examination, Trent testified in relevant part that the following conversation took place between Trent and Petitioner while the two were incarcerated in the Franklin County Jail:

> A.    [Petitioner Conway] told me his brother and couple friends were at a bar, Dockside, and they called him and told him that the individual that they was beefing with before was there.  So Jimmy Conway and one of his friends, I believe it was Rob, went there and there was a fight inside the bar where Ricky Turner sucker punched somebody, then the fight went to the parking lot, and Conway said he was trying to get everybody together, get in the cars, his brother come up to him and told him that he was stabbed, and Jimmy Conway had Rob get the gun out of the trunk, Jimmy Conway asked Jeff to point out who stabbed him, he pointed him out, Jimmy Conway cocked the gun back to make sure it was loaded, said a bullet fell out, he cocked it back to make sure it was loaded and he

just started firing, said the guy was running towards the back of the building, he started firing, *and he pulled some guy in front of him, but he said, it's a .45, you know, it would go through him, so he kept shooting*.

Q.    *It was a .45 and would go through him, so he kept shooting*?

A.    *Correct.*

(Tr. Vol. 10, at 1820 (emphasis added).)  At the conclusion of direct examination, the

prosecution asked Trent to recount again what Petitioner had told him about the incident while

the two were incarcerated together in the Franklin County Jail:

A.    Conway told me that his brother and a couple of their associates was at Dockside Dolls.  They called him and told him that the guy that they had problems with before was there.  He went there, there was a fight inside the bar that led outside.  Conway said he was trying to get everybody together and his brother came to him and told him that he was stabbed.  Conway got a .45 out of the trunk of the car, asked his brother to point out who it was.  He cocked the .45 back to make sure it was loaded and started shooting at the guy.  *The guy was running away from him, he started shooting at him.  He pulled somebody in front of him, but he said he kept shooting anyway, it's a .45 and it will go through both of them.*

(Tr. Vol. 11, at 1875-76 (emphasis added).)

In a sentencing memorandum filed on February 13, 2003, Petitioner included a sentence

or two questioning the veracity of Trent's claim that Petitioner had said that he continued firing

because he knew a .45 bullet would go through both Gervais and Williams.  (App. Vol. 4, at 180-

84.)  But Petitioner neither attached evidence nor made arguments suggesting that Trent had

made that statement to law enforcement officials prior to trial and that the state had failed to

disclose that statement to defense counsel as required by pretrial discovery.  It was in his motion

for a new trial, filed the next day, that Petitioner suggested for the first time that Trent had

testified at trial concerning statements that the State had failed to provide to defense counsel

prior to trial. (App. Vol. 4, at 189.) Still, Petitioner failed to articulate which statements the prosecution failed to provide or to attach any documentary evidence in support of his suggestion.

At the hearing on Petitioner's motion for a new trial, defense attorney Robert Suhr testified that the defense team never received from the State any statement by Ronald Trent claiming that Petitioner had told Trent that Petitioner kept shooting because he knew a .45 bullet would go through both Gervais and Williams. (Tr. Vol. 17, at 2928-29.) Mr. Suhr admitted on cross-examination and during questioning by the trial court that he did not know for certain that such a statement existed. (*Id*. at 2934-36, 2937, 2945-46.) After Mr. Suhr left the stand, Assistant Prosecutor Sheryl Prichard asked if the trial court wished to hear from all three members of the prosecution team and stated, "[o]ur office has absolutely no written or taped statement by Ronald Trent indicating that statement about a .45 going through him, never has." (*Id*. at 2949.) Subsequently, when the prosecution presented its case opposing Petitioner's motion for a new trial, Assistant Prosecutor James Lowe testified on direct examination that Mr. Lowe had found no such statement by Ronald Trent in the prosecution's file and that the first the prosecution had heard that claim was when Trent was on the stand testifying. (*Id*. at 2989.)

In denying Petitioner's motion for a new trial on Petitioner's claim that the prosecution had failed to disclose prior statements by Trent that Petitioner had claimed that he kept shooting because he knew a .45 bullet with go through Gervais and Williams, the trial court found as follows:

> However, the testimony of the prosecuting attorney James Lowe revealed that no
> such prior statement existed. Indeed the prosecutors had turned over hundreds of
> pages of documents and reams of taped statements made by Mr. Trent for perusal
> by the defense. In none of that information does such a statement exist. The
> prosecutors heard that statement from Mr. Trent for the first time during Trent's
> trial testimony. Defense counsel had full opportunity to cross-examine the

77

witness. There is no evidence that discovery was withheld on this matter and no prejudice demonstrated from such a claim.

(App. Vol. 4, at 361-62.)

In spite of the prosecution's repeated assertions and the trial court's factual finding that no such statement existed, Petitioner asserted that Trent *did* make virtually the same statement during a May 26, 2002, interview by Franklin County Sheriff's Detectives Zach Scott and Chris Floyd (in connection with a separate capital murder for which Petitioner was eventually charged, tried, and convicted). Petitioner presented that interview for the first time in his postconviction action. He offered it in support of his claims that ineffective assistance of counsel, caused either by inadequate investigation on counsel's part or by a failure to disclose on the prosecution's part, left defense counsel unaware that Ronald Trent would testify at trial that Petitioner had claimed that he kept shooting because he new a .45 bullet would go through both Gervais and Williams. In that interview, Trent described, among other things, Petitioner's alleged account of what took place at Dockside Dolls:

> TRENT          Step for step. There was a fight at, first of all Jeff, Jimmy Conway's brother, Jeff, Shawn, Jimmy wasn't there, Shawn, Ricky, Jimmy Turner and Brian McWhorter was already there. There was a black guy that Jeff had been beefing with Emanuel Williams, so Jeff called Jimmy from his cell phone and said, look you know Emanuel's here, dude_____-ball bat, so Jimmy said okay, cool. They got with Jamie, they got, Jamie at this time was driving a little white Nissan I think, something like that, so he put the 45 in the trunk, loaded 45 in the trunk went to Dockside Dolls, they went in, they had a few drinks. Jimmy, I believe it was either, no Ricky, Ricky Turner knocked somebody out inside the bar, while he was in there partying, doing whatever, so the bar closes, they went outside there's a fight outside in the parking lot. Ricky

> Turner was getting choked out by one of the bouncers for Dockside Dolls and uh, I guess, Jimmy went over, reached over his shoulder and knocked the guy out. So then, in the midst of the while they're fighting, Jeff Conway is fighting with Emanuel Williams and a couple of his dudes, so I guess he gets cuts, I guess, Jimmy Conway said Emanuel Williams stabbed Jeff, so Jeff comes up to Jimmy and says look, you know, this mother fucker just stabbed me, Jimmy says okay tell Jamie give him the 45 out of the trunk, so he gets the 45 out of the trunk, so he jacks it back to make sure it was_____and bullet fell out, he said, well, show me the mother fucker, Jeff showed him to him, he just starts shooting. Uh, this was like, this is like the right, the back of the bar, like the right corner of the bar or something. Emanuel was running, trying to get behind the bar and Jimmy kept shooting. *Jimmy said Emanuel pulled Jarvis, a white guy named Jarvis in front of him, Jimmy said he just kept shooting.*

FLOYD      Did he know Jarvis?

TRENT      *No, he just said he, he said Emanuel pulled somebody in front of him, he said, fuck it I got a 45, I'm just going to keep shooting.* So he kept shooting, he seen both of them go down, he got his crew together, they got in their cars and left

(App. Vol. 8, at 68.)

The trial court rejected both of Petitioner's claims alleging that inadequate investigation or prosecutorial misconduct caused defense counsel to render ineffective assistance by failing to learn of that May 26, 2002, statement and cross examine Trent more effectively. The trial court rejected both claims exclusively as barred by *res judicata*. (App. Vol. 9, at 476.)

The state appellate court affirmed the trial court's determination, primarily enforcing the *res judicata* bar and alternatively rejecting the ineffective assistance claim as meritless:

First, we disagree with appellant's characterization of Trent's statement. Trent's statement before trial that appellant stated: "I got a 45, I'm just going to keep shooting[,]" is not the same as Trent's testimony at trial that appellant stated: "[I]t's a .45, you know, it would go through him" or "it's a .45 and it will go through both of them."  (Exhibit B at 3; Tr. at 1820, 1876.)  In the May 2002 interview, Trent simply did not state that appellant knew a bullet could go through Gervais and hit Williams.

Second, appellant's claim of prosecutorial misconduct would necessarily depend on evidence that the state failed to disclose the statement.  *State v. Johnston* (1988), 39 Ohio St.3d 48, paragraph four of the syllabus.  Appellant has provided no such evidence here.  As to whether record evidence supports a claim of prosecutorial misconduct, appellant may bring such a claim on direct appeal, and the doctrine of res judicata bars the claim here.  For these reasons, we reject appellant's third ground for relief.

Moreover, appellant has not provided evidence sufficient to require a hearing on the question of whether counsel had the statement beforehand, but failed to prepare.  As we have already concluded, appellant's evidence is insufficient to support his claims that defense counsel were ineffective with respect to preparing for or responding to Trent's testimony as to appellant's statement.  However, because our discussion of appellant's eighth and ninth grounds for relief, which we address below, shed additional light on this issue, we will return to appellant's fourth ground at a later point in our decision.

\*       \*       \*

Returning for the moment to appellant's fourth ground for relief, we conclude that this evidence concerning defense counsel's attempts to suppress and/or limit Trent's testimony also supports our rejection of appellant's assertion that defense counsel did not adequately prepare for Trent's testimony.  Even if defense counsel had the transcript of Trent's May 26, 2002 interview, appellant has not presented evidence sufficient to require a hearing regarding defense counsel's effectiveness.  Therefore, we reject appellant's fourth ground for relief.

(App. Vol. 10, at 418-19, 425.)

Returning to the procedural default defense at issue, Petitioner's precise claim is that had defense counsel conducted a reasonable trial phase investigation (or had the prosecution not committed an unethical failure to disclose requested pretrial statements), defense counsel would have learned that Ronald Trent was planning to testify that Petitioner had stated to Trent that

Petitioner continued shooting even after Petitioner saw Mandel Williams grab Jason Gervais because Petitioner knew that a .45 bullet would go through both Gervais and Williams. Save for the existence of any statement that Trent had made pretrial and to law enforcement officers recounting that Petitioner had told Trent that he kept shooting because he knew that a .45 bullet would go through Gervais and Williams, Petitioner's claim was thoroughly developed on the trial record and capable of being raised and addressed on direct appeal. In other words, this Court agrees with Petitioner that, assuming an undisclosed pretrial statement by Trent existed, it would have supported his claim in a manner that no record evidence could have, thereby requiring Petitioner to raise the claim in postconviction instead of on direct appeal.

Petitioner would have this Court believe that Trent's May 26, 2002 interview with Detectives Zach Scott and Chris Floyd constitutes that statement. But this Court agrees with the state appellate court's opinion that, "Trent's statement before trial that appellant stated: 'I got a 45, I'm just going to keep shooting[,]' is not the same as Trent's testimony at trial that appellant stated: '[I]t's a .45, you know, it would go through him' or it's a .45 and it will go through both of them.' " (App. Vol. 9, at 417.) What made Trent's testimony in this regard so damaging, Petitioner argues, was Petitioner's alleged statement that he kept shooting because he knew that a .45 bullet would got through both Gervais (the unintended victim) and Williams (the intended victim). But the state appellate court found, and this Court agrees, that in the May 2002 interview, Trent simply did not state that appellant knew a bullet could go through Gervais and hit Williams.

The May 26, 2002, interview was the only non-record evidence upon which Petitioner relied as a justification for raising his ineffective assistance claim in postconviction instead of on

direct appeal. Because that evidence does not represent what Petitioner claims it represents–namely, that Trent stated in the interview that Petitioner claimed that knew a .45 bullet would go through Gervais and Williams–this Court cannot find that it supports Petitioner's claim in a manner that no record evidence could. Petitioner argues that he was required to present this ineffective assistance claim in postconviction instead of on direct appeal because the trial record did not reflect whether the State was in possession of Trent's statement or the reasons why defense counsel were unaware of Trent's statement. But Petitioner failed to resolve in postconviction the two ambiguities in the trial record that, according to Petitioner, made it impossible for this claim to be resolved on direct appeal.

For the foregoing reasons, the Court concludes that Ohio's *res judicata* rule required Petitioner to raise this ineffective assistance claim (Doc. # 16, at ¶ 125) on direct appeal and that Petitioner violated the rule by raising the claim in postconviction instead of on direct appeal. The Court further finds, as more fully explained above, that the state courts actually enforced this rule when they rejected his claim in postconviction as barred by *res judicata*. Thus, the first and second parts of the *Maupin* test have been met.

The Court further finds that Ohio's *res judicata* rule is adequate and independent under the third part of the *Maupin* test. To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law. *See Coleman v. Thompson*, 501 U.S. 722, 732-33 (1991). To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts. *Ford v. Georgia*, 498 U.S. 411 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim." *Id*. at 423 (quoting

*James v. Kentucky*, 466 U.S. 341, 348-351 (1984)).  *See also Barr v. City of Columbia*, 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 297 (1964); *see also Jamison v. Collins*, 100 F.Supp.2d 521, 561 (S.D. Ohio 1998).

The Sixth Circuit has consistently held that Ohio's doctrine of *res judicata*, *i.e.*, the *Perry* rule, is an adequate ground for denying federal habeas relief.  *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427-29 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998).  The doctrine of *res judicata* is stated in unmistakable terms in countless Ohio decisions, and Ohio courts have consistently refused, in reliance on that doctrine, to review the merits of claims.  *See State v. Cole*, 2 Ohio St. 3d 112 (1982); *State v. Ishmail*, 67 Ohio St. 2d 16 (1981).  Further, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity.  With respect to the independence prong, the Court concludes that *res judicata* does not rely on or otherwise implicate federal law.  Accordingly, this Court is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief.

According to the fourth part of the *Maupin* test, once the Court determines that a constitutional claim is subject to procedural default, the Court may not address the merits of that claim absent a showing by the petitioner of cause to excuse the default an actual prejudice from the underlying constitutional claim.  Petitioner offers no such argument.  That said, out of an abundance of caution and because the Court has already agreed to revisit other claims that might be subject to procedural default, the Court will entertain in its final decision addressing the

merits of Petitioner's claims any <u>good</u> <u>faith</u> cause and prejudice arguments Petitioner might offer to preserve paragraph 125 of sub-part (A) of his fifteenth claim for relief, such as a <u>colorable</u> claim of ineffective assistance of appellate counsel.  Thus, because the Court cannot yet determine whether Petitioner procedurally defaulted this claim, the Court will **DENY** Respondent's motion to dismiss paragraph 125 of sub-part (A) of Petitioner's fifteenth claim for relief, subject to reconsideration in the event that Petitioner presents any colorable cause and prejudice arguments to excuse the apparent default of paragraph 125.

Continuing with Respondent's procedural default arguments against sub-part (A) of Petitioner's fifteenth claim for relief (ineffective assistance for the failure to conduct adequate pretrial investigation and preparation) Respondent argues that the allegation in paragraphs 127-28 claiming that trial counsel failed to investigate David Baker and Gary Hall is procedurally defaulted because Petitioner failed to raise that allegation in the state courts.  (Doc. # 25, at 19.)  The only claim that Petitioner did raise in this regard, according to Respondent, is not that trial counsel failed to investigate Baker and Hall, but that trial counsel failed to present testimony by Baker and Hall.

Petitioner argues in response that "[t]his is a distinction without difference."  (Doc. # 26, at 24.)  Petitioner insists that he did fairly present to the state courts the substance of the claim that he seeks to present to this Court, reasoning that "[t]he failure to investigate Hall and Baker necessarily encompasses the claim that their testimony was not presented, and the failure to present their testimony is the basis for Petitioner's claim of prejudice."  (*Id.*)  This Court agrees.

The precise claim that Petitioner seeks to present in paragraph 127 of his habeas petition is that counsel performed unreasonably and to Petitioner's prejudice by conducting an

inadequate investigation that failed to turn up Gary Hall. According to Petitioner, state informant Ronald Trent had told Detective Zach Scott that Gary Hall had once confessed to Trent that Hall had committed a crime for which Trent had been charged. Petitioner argues that Hall made no such confession to Trent and that Hall had not spoken to Trent since 1998. Thus, Petitioner argues, the failure to call Hall as a witness constituted ineffective assistance because Hall's testimony would have undermined Trent's credibility. (Doc. # 16, at ¶ 127.)

The precise claim that Petitioner seeks to present in paragraph 128 of his habeas petition is that counsel performed unreasonably and to Petitioner's prejudice by conducting an inadequate investigation that failed to verify Jeff Conway's belief that his life was in jeopardy on the night of the incident through testimony by Jeff's friend David Baker. According to Petitioner, David Baker knew and went to school with Jeff Conway and could have testified regarding an incident during which someone named "Cain" (a friend who was with Mandel Williams at Dockside Dolls on the night of the incident) had once attempted to assault Jeff Conway and David Baker with baseball bats, numchucks, brass knuckles, and guns. Petitioner argues that David Baker also could have testified that Cain had threatened their families. Because Cain was with Mandel Williams at Dockside Dolls on the night of the incident, Petitioner reasons, testimony by David Baker could have supported Jeff Conway's belief that Williams was going to inflict further harm on him. (*Id*. at ¶ 128.)

Petitioner argued in the twelfth claim for relief of his first corrected postconviction action that trial counsel unreasonably and prejudicially failed to present the testimony of David Baker and Gary Hall. (App. Vol. 8, at 394.) Even a cursory review of the body of that claim reveals that Petitioner set forth *verbatim* the facts and arguments he sets forth in paragraphs 127 and 128

of his habeas corpus petition. As the Court noted earlier, satisfying the fair presentment requirement entails not only presenting a claim to the state courts as a federal constitutional claim, but also presenting that claim to the state courts under the same facts <u>and</u> legal theories that the petitioner seeks to present in habeas corpus. Although a certain degree of tinkering is permissible, a petitioner does not fairly present a claim if he presents an issue to the state courts under one legal theory and set of facts, and then presents the issue to the federal courts under a different legal theory or a different set of facts. *See, e.g., Lott v. Coyle*, 261 F.3d at 607. Under any definition of the fair presentment requirement, Petitioner in this instance fairly presented to the state courts the substance of the ineffective assistance claim that he seeks to present in paragraphs 127 and 128 of sub-part (A) of his fifteenth claim for relief.[4] Accordingly, the Court will **DENY** Respondent's motion to dismiss paragraphs 127 or 128 of sub-part (A) of Petitioner's fifteenth claim for relief as not fairly presented.

Continuing with Respondent's procedural default arguments against sub-part (A) of Petitioner's fifteenth claim for relief (ineffective assistance for the failure to conduct adequate pretrial investigation and preparation), Respondent argues that the allegation in paragraph 130 concerning the forfeiture of the ability to present a shooting reconstruction expert due to trial counsel's failure to provide the necessary pretrial discovery is procedurally defaulted because Petitioner never asserted that issue in the state court. (Doc. # 25, at 19.)

---

[4] Although the trial court plainly rejected this ineffective assistance claim on the merits (App. Vol. 9, at 479-80), it is debatable whether Petitioner concisely presented these allegations on appeal. It does not appear that he set forth with specificity his ineffective assistance claim concerning Gary Hall and David Baker (App. Vol. 10, at 28-69), but he did include in the appendix to his appellate brief the trial court's decision rejecting those claims (*Id*. at 71-78). In any event, the state appellate court did not address this ineffective assistance claim. (*Id*. at 401-26.)

Petitioner insists that he did, referring this Court to page 329 of Volume 7 of the Appendix. What Petitioner refers the Court to, however, is his Application for Reopening of his direct appeal pursuant to S. Ct. Prac. R. XI, Section 6–the procedure in Ohio for raising claims of ineffective assistance of appellate counsel.

Petitioner's presentation of this claim of ineffective assistance of trial counsel in his Application for Reopening does not satisfy the fair presentment requirement. Under Ohio law, an application for reopening pursuant to S. Ct. Prac. R. XI, Section 6 is a procedural mechanism for raising claims of appellate counsel ineffectiveness, not for bootstrapping substantive constitutional claims that were not raised on direct appeal. Fair presentment requires a petitioner to present his claims to the state courts in a procedure and manner that will provide the state courts with the opportunity to apply controlling legal principles. *Picard v. Connor*, 404 U.S. 270, 276-77 (1971). In keeping with that fair presentment principle, this Court rejects any argument that raising a claim in an application is equivalent to raising that claim on direct appeal. The only claims preserved by an application for reopening are claims of ineffective assistance of appellate counsel. But the Court's inquiry does not end here.

Notwithstanding the foregoing, the Court concludes that Petitioner did not waive paragraph 130 of sub-part (A) of Petitioner's fifteenth claim for relief for one simple reason: Respondent expressly withdrew his motion to dismiss that claim as procedurally defaulted. (Doc. # 27, at 10.) That being so, even in view of Petitioner's failure to fairly present the claim and this Court's ability, if it chooses, to raise *sua sponte* Petitioner's failure to fairly present the claim, this Court will treat this ineffective assistance claim as properly before it. This Court will

**DENY** Respondent's motion to dismiss paragraph 130 of sub-part (A) of Petitioner's fifteenth claim for relief, due to Respondent's express withdrawal of that motion.

Finally, Respondent tacks on the following argument concerning sub-part (A) of Petitioner's fifteenth claim for relief:

> Petitioner may be alleging ineffective assistance of trial counsel, in Part A, ¶124 and header, for failure "to conduct a reasonable trial phase investigation." This could be an introductory paragraph to the sub-claims in Part A or construed as a separate claim. In case of the latter, the Warden moves this Court to find this sub-claim procedurally defaulted because Petitioner has never before asserted this issue in state court.

(Doc. # 25, at 19-20.) Petitioner responds that Respondent's argument "is a distinction without difference" because "[t]he six instances that Petitioner cites constitute an unreasonable investigation and vice versa." (Doc. # 26, at 25.) The Court agrees. A common sense reading of Petitioner's fifteenth claim for relief, and all of the sub-parts thereto, persuades this Court that Petitioner's statement that his trial attorneys failed "to conduct a reasonable trial phase investigation" was not an attempt by Petitioner to raise a separate and distinct claim, but a mere heading or explanatory phrase. The Court will **DENY** Respondent's motion to dismiss paragraph 124 of sub-part (A) of Petitioner's fifteenth claim for relief.

### 2. Sub-part (C)–Failure To Strike Juror Finegold.

Petitioner argues in sub-part (C) of his fifteenth claim for relief that his trial attorneys performed unreasonably and to his prejudice by conducting an unreasonable voir dire. (Doc. # 16, at ¶¶ 136-141.) Those allegations include an argument that counsel were ineffective for failing to use a peremptory challenge to strike a juror (Frank Finegold) who, according to Petitioner, indicated he would automatically vote for the death penalty if the jury found Petitioner guilty. (*Id*. at 139-41.)

Respondent argues that Petitioner defaulted his allegations concerning counsel's failure to strike Juror Finegold because Petitioner never presented that claim of trial counsel ineffectiveness to the state courts.  (Doc. # 25, at 19.)  Hinting that Petitioner may have asserted a claim of appellate counsel ineffectiveness concerning this issue, Respondent argues that "the issue of whether appellate counsel was ineffective for not raising this claim is not the same issue."  (*Id*.)

Petitioner concedes that he presented this trial counsel ineffectiveness claim to the state courts only as an instance of appellate counsel ineffectiveness.  But Petitioner argues that this does not operate as a procedural bar to his claim because Petitioner may be able to demonstrate cause and prejudice–the appellate counsel ineffectiveness claim that he did present to the state courts–to excuse the default of this trial counsel ineffectiveness claim.  (Doc. # 26, at 24.)  As he has with other claims, Petitioner goes on to ask the Court to defer until after he files his merits briefing any determination as to whether Petitioner defaulted this component of his fifteenth claim for relief.

Notwithstanding Respondent's argument urging the Court not to defer its procedural default rulings, out of an abundance of caution, the Court will entertain in its final decision addressing the merits of Petitioner's claims any <u>good</u> <u>faith</u> cause and prejudice arguments that Petitioner might offer to preserve paragraphs 139-41 of sub-part (C) of his fifteenth claim for relief, such as a <u>colorable</u> claim of ineffective assistance of appellate counsel.  Thus, because the Court cannot yet determine whether Petitioner procedurally defaulted this claim, the Court will **DENY** Respondent's motion to dismiss paragraphs 139-41 of sub-part (C) of Petitioner's

fifteenth claim for relief, subject to reconsideration in the event that Petitioner presents any

colorable cause and prejudice arguments to excuse the apparent default of paragraphs 139-41.[5]

### 3. __Sub-part (D)__–Failure To Timely Object.

In sub-part (D) of his fifteenth claim for relief, Petitioner argues that his defense

attorneys performed unreasonably during the trial phase presentation by, among other things,

failing to properly object or take other steps necessary to preserve the following issues for

appeal: (1) the impropriety of the bailiff swearing in the jury; (2) the violation of Petitioner's

right to a public trial; (3) the admission of testimony by a former assistant prosecutor; (4) the

admission of testimony by Benjamin Bechtel concerning the decedent's background; and (5) the

exclusion of Petitioner from the jury instruction conferences. (Doc. # 16, at ¶ 146.)

Respondent argues that Petitioner waived the ineffective assistance allegations set forth

in paragraph 146 because Petitioner never presented those allegations to the state courts. (Doc. #

25, at 19.) Respondent also argues that, to the extent that Petitioner argued in paragraph 130 that

defense counsel failed to conduct a reasonable trial phase presentation as a separate claim, rather

than a mere heading to sub-part (D), he defaulted that claim because he never presented it to the

state courts. (_Id_. at 20.) The Court rejects Respondent's latter argument. As the Court noted

above in connection with paragraph 124 of sub-part (A) of Petitioner's fifteenth claim for relief,

a common sense reading of Petitioner's fifteenth claim for relief and all of the sub-parts thereto

---

[5]      Notwithstanding the Court's disposition of this claim, the Court would be remiss if it did not note
that Respondent's argument _and_ Petitioner's concession that Petitioner never presented this trial counsel
ineffectiveness claim to the state courts as anything other than an instance of appellate counsel ineffectiveness is
factually inaccurate. Petitioner argued quite plainly in the seventh ground for relief of his postconviction action that
his trial attorneys performed unreasonably and to his prejudice by failing to use a peremptory challenge to strike
Juror Finegold on the basis of Finegold's suggestion that he would automatically vote for the death penalty if the
jury found Petitioner guilty. (App. Vol. 8, at 52.) Although the state courts rejected the claim as barred by _res
judicata_, it is nonetheless factually inaccurate to assert (or concede) that Petitioner never presented the claim to the
state courts.

persuades this Court that Petitioner's statement that his trial attorneys failed "to conduct a reasonable trial phase investigation" was not an attempt by Petitioner to raise a separate and distinct claim, but a mere heading or explanatory phrase. The Court will **DENY** Respondent's motion to dismiss paragraph 130 of sub-part (D) of Petitioner's fifteenth claim for relief.

Petitioner contends that Respondent's argument that he never presented the allegations set forth in paragraph 146 to the state courts is factually inaccurate. Petitioner points the Court to pages 77-80, 83-86, and 149-53 of volume 6, as well as pages 330-31 of volume 7, of the state court appendix.

In his reply, Respondent withdraws his motion to dismiss concerning trial counsel's alleged failure to object to the admissibility of the testimony of a former assistant prosecuting attorney or the testimony of Benjamin Bechtel's concerning the decedent's background. (Doc. # 27, at 10.) As to Petitioner's insistence that he preserved all of the instances of counsel's failure to object set forth in paragraph 146, Respondent disagrees. Respondent argues that whatever else Petitioner presented to the state courts, he did not present specifically claims that trial counsel *failed to object* concerning the swearing in of the jury, Petitioner's right to a public trial, or the exclusion of Petitioner from jury instruction conferences. (*Id.*)

The Court concludes that Petitioner's allegations concerning admission of testimony by a former prosecuting attorney, admission of testimony by Benjamin Bechtel, and the exclusion of Petitioner from jury instruction conferences are properly before the Court. Petitioner's allegations in paragraph 146 complaining that counsel performed unreasonably and to Petitioner's prejudice by failing to object to the admissibility of testimony by a former assistant prosecuting attorney and to the admissibility of testimony by Benjamin Bechtel concerning the

decedent's background are properly before the Court for review on the merits, due to Respondent's express withdrawal of his motion to dismiss those claims. Additionally, Petitioner's allegations in paragraph 146 complaining that his defense counsel were ineffective for failing to object to or otherwise preserve for review the exclusion of Petitioner from the jury instruction conferences. Review of the record reveals that Petitioner presented that precise claim of trial counsel ineffectiveness to the Ohio Supreme Court on direct appeal as part of his nineteenth proposition of law. (App. Vol. 6, at 152-53.)

The Court further concludes that Petitioner's allegations concerning trial counsel's failure to object to the improper swearing in of the jury and the violation of Petitioner's right to a public trial are *not* properly before the Court. Petitioner's argument that he presented those claims of trial counsel ineffectiveness to the state courts is belied by the record. This Court reviewed not only the specific record citations offered by Petitioner, but also Petitioner's entire direct appeal brief, Application for Reopening, and postconviction action; nowhere did Petitioner present claims that his trial attorneys were ineffective for failing to object to the improper swearing in of the jury or to the violation of Petitioner's right to a public trial. Thus, it appears that Petitioner defaulted those components of paragraph 146 of sub-part (D) of his fifteenth claim for relief.

When a petitioner fails to fairly present constitutional claims to the state courts and no remedy remains for him to do so, the federal court is precluded from reviewing those claims absent a showing of cause and prejudice to excuse the default. Petitioner offers no such argument. That said, out of an abundance of caution and because the Court has already agreed to revisit other claims that might be subject to procedural default, the Court will entertain in its

final decision addressing the merits of Petitioner's claims any <u>good</u> <u>faith</u> cause and prejudice arguments Petitioner might offer to preserve the components of paragraph 146 alleging that trial counsel failed to object to or otherwise preserve for review the swearing in of the jury and Petitioner's right to a public trial.

For the foregoing reasons, the Court **DENIES** Respondent's motion to dismiss the components of paragraph 146 of sub-part (D) of Petitioner's fifteenth claim for relief alleging that counsel failed to object to the testimony of a former prosecuting attorney, the testimony of Benjamin Bechtel concerning the decedent's background, and the exclusion of Petitioner from jury instruction conferences. The Court also **DENIES** Respondent's motion to dismiss any claim alleging that counsel failed to conduct a reasonable trial phase presentation (¶ 130). Because the Court cannot yet determine whether Petitioner procedurally defaulted the components of paragraph 146 alleging that trial counsel failed to object to or otherwise preserve for review the swearing in of the jury and Petitioner's right to a public trial, the Court will **DENY** Respondent's motion to dismiss those components of paragraph 146 of Petitioner's fifteenth claim for relief, subject to reconsideration in the event that Petitioner presents any colorable cause and prejudice arguments to excuse the apparent default of those allegations.

**M.**     **Seventeenth Claim for Relief: Petitioner's sentence is constitutionally infirm because Ohio's capital punishment system operates in an arbitrary and capricious manner.**

In his seventeenth claim for relief, Petitioner raises numerous challenges to the constitutionality of Ohio's capital punishment scheme. (Doc. # 16, at ¶¶ 172-93.)

Respondent raises procedural default arguments against four of those challenges. (Doc. # 25, at 20-21.) First, Respondent argues that Petitioner defaulted the following challenges

because he failed to present them to the state courts: paragraphs 178 through 180 alleging that the death penalty is imposed in a racially discriminatory manner; paragraph 183 challenging the fact that any presentence investigation report or mental examination requested by a death-eligible defendant pursuant to Ohio Rev. Code § 2929.03(D)(1) must be furnished to the trial court, prosecution, and jury; and paragraphs 189 through 191 discussing problems such as the under-funding of defense counsel, lack of adequate corrective processes, and pervasive effects of race identified by the American Bar Association and the United Nations High Commissioner for Human Rights. Second, Respondent argues that Petitioner defaulted any claims that lethal injection violates the Eighth Amendment and that Ohio's postconviction procedures are unconstitutional by raising them in postconviction instead of on direct appeal in violation of Ohio's doctrine of *res judicata*.

### 1. Paragraphs 178 through 180.

Petitioner offers responses to each of Respondent's arguments and the Court will address each in turn. With respect to Respondent's claim that he defaulted paragraphs 178 through 180 alleging racial discrimination in the imposition of the death penalty in Ohio by failing to present those allegations to the state courts, Petitioner argues that he satisfied the fair presentment requirement as to those claims by "rel[ying] on the Equal Protection Clause of the Fourteenth Amendment in his direct appeal to the Ohio Supreme Court." (Doc. # 26, at 26 (citing App. Vol. 6, at 88-89).) Respondent offers no specific argument in reply but none is needed.

Review of the record confirms Respondent's argument that Petitioner failed to fairly present to the Ohio Supreme Court the arguments he seeks to present in paragraphs 178 through 180. In those paragraphs, Petitioner argues that Ohio's capital punishment scheme "results in the

imposition of death penalties in an arbitrary and racially discriminatory manner, with blacks and those who killed white victims being more likely to get the death penalty." (Doc. # 16, at ¶ 178.) Petitioner goes on to argue that "[b]lack males compose approximately five percent of Ohio's general population, yet they compose 50 percent of death row inmates," and to offer other specific numbers purporting to establish that "[a] perpetrator is geometrically more likely to end up on death row if the homicide victim is white rather than black." (Doc. # 16, at ¶ 179 (internal quotation marks omitted).)

On direct appeal, Petitioner presented his various challenges to the constitutionality of Ohio's capital punishment scheme in his ninth proposition of law. (App. Vol. 6, at 87-99.) That proposition understandably was replete with references to the Equal Protection Clause of the Fourteenth Amendment, as Petitioner represents. But the Equal Protection Clause guarantees more than just freedom from racial discrimination. Thus, the Court rejects Petitioner's argument that his citation to the Equal Protection Clause was sufficient to give the Ohio Supreme Court fair notice that he was raising the specific allegations of racial discrimination that he seeks to raise in paragraphs 178 through 180 of his habeas petition. Nowhere in his ninth proposition of law did Petitioner argue specifically as he does in his habeas petition that the death penalty in Ohio is imposed in a racially discriminatory manner.

As the Court has previously explained, in order to satisfy the exhaustion requirement in habeas corpus, a petitioner must fairly present the substance of his constitutional claim to the state courts. *Anderson v. Harless*, 459 U.S. 4, 6, (1982); *Picard v. Connor*, 404 U.S. 270, 275 (1971). A petitioner "fairly presents" the "substance of his federal habeas corpus claim" when the state courts are afforded sufficient notice and a fair opportunity to apply controlling legal

principles to the facts bearing upon the constitutional claim. *Harless*, 459 U.S. at 6. With respect to the question of whether, or to what extent, new facts or evidence not presented to the state courts can affect a petitioner's ability to present that claim to the federal courts, the Sixth Circuit has held that the new facts or evidence presented in conjunction with the claim must not place that claim in a "significantly different posture" than that presented to the state courts. *Sampson v. Love*, 782 F.2d 53, 55 (6th Cir. 1986).[6] The United States Supreme Court reached a similar result in *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986), when it approved the district court's decision to direct the parties to supplement the record with updated, more expansive statistics regarding racial composition of the jury venire than the statistics that had been presented to the state courts. Observing that the district court had been "motivated by a responsible concern that it provide the meaningful federal review of constitutional claims that the writ of habeas corpus contemplated throughout its history," the United States Supreme Court held that additional facts or evidence may be considered by a federal habeas corpus court where that new information does not "fundamentally alter the legal claim already considered by the state courts." *Id; see also Bragen v. Morgan*, 791 F.Supp. 704, 720-21 (M.D. Tenn. 1992) (holding that a petitioner is not required to return to the state courts with new evidence which, although helpful, is not sufficiently compelling).

In light of the foregoing, the Court agrees with Respondent that Petitioner failed to fairly present to the Ohio Supreme Court the substance of the allegations of racial discrimination set forth in paragraphs 178 through 180 of the habeas petition.

---

[6] The Sixth Circuit in *Sampson* addressed this issue in the context of exhaustion, concluding that the petitioner had presented new evidence sufficient to place his claim in a significantly different posture and that there were available state remedies for the petitioner to present his new evidence.

### 2. Paragraph 183.

Respondent argues that Petitioner failed to present to the state courts his allegation in paragraph183 challenging the provisions in Ohio Rev. Code § 2929.03(D)(1) that require any presentence investigation report or mental examination requested by Petitioner to be furnished to the trial court, prosecution, and jury. Petitioner argues that he cited Ohio Rev. Code § 2929.03(D)(1) and challenged it as violating his federal constitutional rights in his direct appeal brief to the Ohio Supreme Court. (Doc. # 26, at 26 (citing App. Vol. 6, at 99).) Respondent argues in reply that the only argument that Petitioner presented to the Ohio Supreme Court–a single sentence challenging Ohio Rev. Code §§ 2903.01, 2020.02, 2929.021, 2929.03, 2929.04, and 2929.05 as violating the Fifth, Sixth, Eighth, and Fourteenth Amendments–was insufficient to give the Ohio Supreme Court fair notice that Petitioner was seeking to challenge the specific provisions of Ohio Rev. Code § 2929.03(D)(1) that he now seeks to challenge. (Doc. # 27, at 10-11.) Respondent's argument is well taken.

Petitioner argues in paragraph 183 of his habeas petition that, "[t]he Ohio system is also unconstitutional because O.R.C. § 2929.03(D)(1) mandates that the results of any mental examination and background investigation performed pursuant to this statute must be furnished to the trial court, the jury[,] and the prosecutor." (Doc. # 16, at ¶ 183.) As noted above, Petitioner presented his various challenges to the constitutionality of Ohio's capital punishment scheme in his ninth proposition of law on direct appeal to the Ohio Supreme Court. (App. Vol. 6, at 87-99.) Petitioner's only mention of Ohio Rev. Code § 2929.03(D)(1) was, as Respondent asserts, a single sentence in conclusion arguing that Ohio Rev. Code §§ 2903.01, 2020.02, 2929.021, 2929.03, 2929.04, and 2929.05 violate the federal and Ohio constitutions. (App. Vol.

6, at 99.)  Nowhere did Petitioner challenge specifically the provision in Ohio Rev. Code §
2929.03(D)(1) requiring any presentence investigation report or mental examination requested
by the defendant to be provided to the trial court, prosecution, and jury.

Petitioner's inclusion of a single citation to § 2929.03(D)(1) was not enough to preserve
the specific challenge set forth in paragraph 183 of the habeas petition.  In view of the fact that
Ohio Rev. Code § 2929.03(D)(1) contains numerous provisions and requirements, Petitioner's
inclusion of § 2929.03(D)(1) in a string cite of Ohio statutory provisions was insufficient to give
the Ohio Supreme Court fair notice that Petitioner was challenging the requirement that any
presentence investigation report or mental examination requested by Petitioner be provided to
the trial court, prosecution, and jury.

In light of the foregoing, the Court agrees with Respondent that Petitioner failed to fairly
present to the Ohio Supreme Court the substance of the allegation set forth in paragraph 183 of
the habeas petition.

### 3.  Paragraphs 189 through 191.

With respect to Respondent's argument that he failed to present to the state courts the
challenge set forth in paragraphs 189 through 191 discussing problems such as the under-funding
of defense counsel, lack of adequate corrective processes, and pervasive effects of race identified
by the American Bar Association and the United Nations High Commissioner for Human Rights,
Petitioner "submits that the numerous federal citations and lengthy analysis of Ohio's capital
punishment framework provided to the Ohio Supreme Court in support of his Eighth
Amendment claim were adequate to preserve these matters for review in § 2254 proceedings."
(Doc. # 26, at 26-27 (citing App. Vol. 6, at 87-99).)  Petitioner's argument is not well taken.

Citing reports by the American Bar Association and by the United Nations High Commissioner for Human Rights, Petitioner argues in paragraphs 189 through 191 that Ohio, like other jurisdictions, has systemic problems with incompetent and/or under-funding of counsel in death penalty cases, lack of fair and adequate review processes, and pervasive effects of race. (Doc. # 16, at ¶¶ 189-91.)  Careful review of Petitioner's ninth proposition of law on direct appeal to the Ohio Supreme Court reveals no allegations concerning the under-funding of counsel or the pervasive effects of race.  (App. Vol. 6, at 87-99.)  Under no definition of "fair presentment" can the Court accept Petitioner's argument that the numerous federal citations and lengthy analysis of Ohio's capital punishment framework set forth in his appellate brief were sufficient to give the Ohio Supreme Court fair notice that Petitioner was arguing specifically, as he does in paragraphs 189 through 191, that the under-funding of counsel or pervasive effects of race rendered Ohio's capital punishment scheme unconstitutional.  That said, the Court is satisfied that Petitioner made specific challenges to the adequacy of Ohio's appellate review process, such as the under-reporting of data necessary to ensure thorough review of whether a death sentence is excessive, disproportionate, or inappropriate.  (*Id*. at 94-96.)  That allegation is properly before the Court for review on the merits *only to the extent* that Petitioner presented that allegation to the Ohio Supreme Court.

In light of the foregoing, the Court agrees with Respondent that Petitioner failed to fairly present to the Ohio Supreme Court the allegations set forth in paragraphs 189 through 191 concerning the under-funding of competent counsel or the pervasive effects of race.  The Court rejects, however, Respondent's argument that Petitioner failed to fairly present to the Ohio Supreme Court the allegation set forth in paragraphs 189 through 191 concerning the lack of fair

and adequate review; that argument is preserved only to the extent that Petitioner presented this argument in his ninth proposition of law on direct appeal to the Ohio Supreme Court.

### 4. Lethal Injection Challenge.

Finally, as to Respondent's argument that Petitioner defaulted any claim challenging the constitutionality of Ohio's lethal injection protocol, Petitioner points out that he has raised no such claim in this proceeding and is litigating his lethal injection challenge in a separate action pursuant to 42 U.S.C. § 1983. (Doc. # 26, at 27 (citing *Cooey, et al. v. Strickland, et al.*, Case No. 2:04-CV-1156 (S.D. Ohio))) In reply, Respondent expressly withdraws his motion to dismiss any such claim. Accordingly, no further analysis is required.

### 5. Conclusion.

With the exception of Petitioner's allegation challenging the adequacy of appellate review in Ohio set forth in paragraphs 189 through 191, the Court concludes that Petitioner failed to fairly present the allegations set forth in paragraphs 178 through 180, paragraph 183, and paragraphs 189 through 191. That said, out of an abundance of caution and because the Court has already agreed to revisit other claims that might be subject to procedural default, the Court will entertain in its final decision addressing the merits of Petitioner's claims any <u>good faith</u> cause and prejudice arguments that Petitioner might offer to preserve those paragraphs.

For the foregoing reasons, the Court **DENIES** Respondent's motion to dismiss the allegation in paragraphs 189 through 191 challenging the adequacy of appellate review in Ohio. Because the Court cannot yet determine whether Petitioner procedurally defaulted the paragraphs 178 through 180, paragraph 183, and paragraphs 189 through 191, the Court will **DENY** Respondent's motion to dismiss those paragraphs of Petitioner's seventeenth claim for

relief, subject to reconsideration in the event that Petitioner presents any colorable cause and prejudice arguments to excuse the apparent default of those allegations.

**N.**  **Eighteenth Claim for Relief**: **Petitioner's convictions and death sentences are invalid under the federal constitutional guarantees of due process, equal protection, the effective assistance of counsel, a fair tribunal, an impartial jury, and a reliable sentence due to the cumulative errors in the admission of evidence and instructions, gross misconduct by State officials and witnesses, and the systematic deprivation of his right to the effective assistance of counsel.**

Petitioner argues in his eighteenth claim for relief that the cumulative effect of errors demonstrated in his petition deprived Petitioner of fundamental fairness and rendered his convictions and sentences unconstitutional.  (Doc. # 16, at ¶¶ 194-96.)  The only argument advanced by Respondent for dismissing this claim is that Petitioner's claim is not cognizable in federal habeas corpus because no United States Supreme Court precedent supports Petitioner's argument.  Because this Opinion and Order addresses only procedural default, the Court **DENIES** as premature Respondent's motion to dismiss Petitioner's eighteenth claim.


## V.  Conclusion

For the foregoing reasons, the Court **DENIES** Respondent's motion to dismiss as to the following claims: three, ten, eleven, twelve, thirteen, fifteen (in part), seventeen (in part), and eighteen.  Further, the Court **DENIES**, subject to reconsideration in the event that Petitioner presents any colorable cause and prejudice arguments, Respondent's motion to dismiss as to the following claims: two, four and six, five, eight, nine, fourteen, fifteen (in part), and seventeen (in part).

In accordance with the Court's First Scheduling Order (Doc. # 17), Petitioner shall file, within thirty (30) days of the date of this Opinion and Order, any motion for discovery, for funds for expert or investigative services, and/or for an evidentiary hearing. Respondent shall file any memorandum in opposition within thirty (30) days of the date that Petitioner files his motion. Petitioner shall file any reply within fifteen (15) days of the date that Respondent files the memorandum in opposition.

**IT IS SO ORDERED.**

    s/Algenon L. Marbley
**ALGENON L. MARBLEY**
**United States District Judge**