IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JAMES T. CONWAY, III,

    **Petitioner,**

v.

    Case No. 2:07cv947
    **CHIEF JUDGE MARBLEY**
    **Magistrate Judge Jolson**

**WARDEN, CHILLICOTHE**
**CORRECTIONAL INSTITUTION,**

    **Respondent.**

## OPINION AND ORDER

Petitioner Conway, a prisoner sentenced to death by the State of Ohio, has pending before this Court a habeas corpus action pursuant to 28 U.S.C. § 2254. This matter is before the Court on Petitioner's Motion to Hold These Proceedings in Abeyance Pending the Exhaustion of State Court Remedies. (ECF No. 226.) For the reasons that follow, the Court **DENIES** Petitioner's motion.

I.     BACKGROUND

Petitioner was convicted and sentenced to death for the January 19, 2002, shooting death of Jason Gervais, which occurred at a Columbus, Ohio club called Dockside Dolls. Mandell Williams was also shot and wounded. *State v. Conway*, 108 Ohio St.3d 214 (2006). Following direct appeal and state postconviction proceedings, Petitioner initiated the instant habeas action on January 29, 2007, by filing a notice of intent to file a habeas petition, as well as motions to proceed in forma pauperis and for the appointment of counsel. (ECF No. 1.) Petitioner filed his

1

initial habeas petition on October 2, 2007. (ECF No. 16.) Subsequently, and with leave of Court, Petitioner filed an Amended Petition, (ECF No. 95), a Second Amended Petition, (ECF No. 141), and a Third Amended Petition. (ECF No. 217.)

In the early stages of this habeas action, the Court permitted considerable factual development. On March 17, 2010, the Court granted Petitioner's request to conduct a records deposition of the Columbus Police Department and the original police investigation of the shootings. (ECF No. 33.) The Court expanded the record with documents from that records deposition, as well as documents obtained as part of the discovery in Petitioner's other unrelated capital habeas corpus case. (ECF No. 51.) *See Conway v. Houk*, Case No. 3:07cv345 (S.D. Ohio).

On March 1, 2016, and following discovery, this Court granted Petitioner's request to stay and hold the proceedings in abeyance so he could return to the state courts to file a successive postconviction action in order to exhaust a newly discovered *Brady* claim, a newly discovered conflict of interest claim pertaining to his original trial attorney Christopher Cicero, and additional factual support for his claims of ineffective assistance of trial and appellate counsel. (ECF No. 161.) With respect to the *Brady* claim specifically, Petitioner asserted that documents he obtained through the records deposition of the Columbus Police Department "reveal[ed] that the prosecution suppressed three categories of evidence that were both favorable and material 1) prior inconsistent statements of its witnesses, 2) witness statements that indicated that a specific person other than Petitioner committed the crime, and 3) witness statements that conflict with the prosecution's theory of the case." (ECF No. 132, at PAGEID # 9804.) Petitioner also pointed to previously undisclosed statements concerning Attorney Cicero that he

2

claimed established an actual conflict of interest. (*Id*. at PAGEID # 9811.)

Ohio imposes stringent jurisdictional requirements for pursuing an untimely and/or successive postconviction action, and the state courts in Petitioner's case determined he failed to satisfy those requirements. (ECF No. 187-12, at PAGEID # 13492-13513; ECF No. 187-13, at PAGEID # 13940-13967.) On January 6, 2017, the state trial court denied the successive postconviction petition without a hearing, finding "all of Petitioner's grounds for relief are barred by the prohibition against successive petitions under R.C. 2953.23(A), or by the doctrine of *res judicata*." (ECF No. 187-12, at PAGEID # 13499-13500.) The Tenth District Court of Appeals affirmed. *State v. Conway*, No. 17AP-90, 2019-Ohio-382, 2019 WL 480342 (Ohio App. 10th Dist. Feb. 7, 2019); (ECF No. 187-13, at PAGEID # 13940.) The Court of Appeals addressed Petitioner's claims in detail but ultimately held Petitioner failed to demonstrate that the trial court had jurisdiction under § 2953.23(A)(1). *Id*. The Ohio Supreme Court declined to accept jurisdiction over Petitioner's appeal. *State v. Conway*, 156 Ohio St.3d 1464 (2019); (ECF No. 187-14, at PAGEID # 14180.)

On August 13, 2019, and following completion of the state court proceedings, this case was reinstated to the Court's active docket. (ECF No. 190.) On September 24, 2021, Petitioner filed a Third Amended Petition, (ECF Nos. 216, 217), setting forth the *Brady* claim he attempted to litigate in the successive state court postconviction proceeding as his Eighteenth Claim for Relief. On January 13, 2022, Respondent filed a Return of Writ arguing any claims raised in the successive postconviction action were procedurally defaulted, because the state appellate court determined it lacked jurisdiction to hear the successive petition. (ECF No. 221.)

Citing the Ohio Supreme Court's recent decision in *State v. Bethel*, 167 Ohio St.3d 362

3

(2022), Petitioner now moves to stay and hold the proceedings in abeyance, so he may return to the state courts for a second time in order to pursue the same *Brady*, ineffective assistance of counsel and conflict of interest claims the state courts dismissed. (ECF No. 226.) Petitioner also moves the Court to authorize his federal habeas counsel to represent him during his anticipated state court proceedings. The Warden opposes Petitioner's motion. (ECF No. 227.)

**II. DISCUSSION**

Petitioner contends the Ohio Supreme Court's recent decision in *State v. Bethel*, 167 Ohio St.3d 362 (2022), "expands the scope of the remedies afforded by the filing of a successive state court petition and a motion for a new trial," and "renders unexhausted three of the constitutional claims raised in Conway's pending third amended habeas petition." (ECF No. 226, at PAGEID # 16029.) Respondent opposes Petitioner's motion to stay and abey, arguing that Petitioner has already exhausted the "new" claims set forth in his Third Amended Petition. (ECF No. 227, at PAGEID # 16042.)

The Court's analysis of this issue must necessarily begin with a discussion of the Ohio Supreme Court's *Bethel* decision.

**A.  *State v. Bethel***

In *State v. Bethel*, 167 Ohio St.3d 362 (2022), and more recently, *State v. McNeal*, 169 Ohio St.3d 47 (2022) and *State v. Hatton*, __ N.E.3d __, 2022 WL 16841856 (Nov. 10, 2022), the Ohio Supreme Court considered when a trial court has subject matter jurisdiction to consider a post-trial *Brady* claim set forth in either a successive postconviction petition or a Criminal Rule 33 motion for leave to file a motion for a new trial. The issue before the Ohio Supreme Court was whether a timeliness or due diligence requirement could be imposed upon a petitioner after

4

discovering (or after the point when a petitioner should have discovered) that the state withheld *Brady* material.

Section 2953.23(A)(1) of the Ohio Revised Code conditions trial court jurisdiction over untimely or successive postconviction petitions on a petitioner's showing (a) that he was "unavoidably prevented from discovery of the facts" underlying his claim, and (b) that no reasonable factfinder would have found him guilty or eligible for a death sentence but for the constitutional error at trial. In *Bethel*, the Supreme Court of Ohio held that a petitioner asserting a claim under *Brady v. Maryland*, 373 U.S. 83 (1963), "satisfies the 'unavoidably prevented' requirement contained in R.C. 2953.23(A)(1)(a) by establishing that the prosecution suppressed the evidence on which the defendant relies." 167 Ohio St.3d at 368. *Bethel* made clear that petitioners are not required to show they could not have discovered suppressed evidence by exercising reasonable diligence, because that "burden" is "inconsistent with *Brady*." *Id*. Quoting *Banks v. Dretke*, 540 U.S. 668, 695 (2004), the *Bethel* court reminded prosecutors and lower courts alike that criminal defendants "have no duty to 'scavenge for hints of undisclosed *Brady* material.'" *Id.* (quoting *Dretke*, 540 U.S. at 695). The Ohio Supreme Court also interpreted the "no reasonable factfinder" requirement contained in § 2953.23(A)(1)(b) as coterminous with *Brady* materiality, by considering the merits of Bethel's *Brady* claim in its determination of jurisdiction over the successive petition. The Ohio Supreme Court advised that the § 2953.23(A)(1)(b) requirement "goes to the heart of *Brady*'s third prong, which requires Bethel to show that 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Bethel*, 167 Ohio St.3d at 369-70 (quoting *Kyles v. Whitley*, 514 U.S. 419, 433 (1995)). Bethel, the court concluded, was "not

5

require[d] to show that disclosure of the [] information would have resulted in his acquittal." *Id*.

The Ohio Supreme Court also determined that Criminal Rule 33 does not contain a "reasonable time" filing requirement in connection with motions for leave to file a motion for a new trial when the basis for the motion is newly discovered evidence. The lower courts denied Bethel's motion for leave to file a motion for a new trial because of "unreasonable delay" between the time of discovery of the evidence and the time Bethel filed his motion. The Ohio Supreme Court explained that although Criminal Rule 33 requires a petitioner to show that he was "unavoidably prevented from the discovery of the evidence upon which he must rely," the Rule "does not give a deadline by which a defendant must seek leave to file a motion for a new trial based on the discovery of new evidence." *Id*. at 375. Ultimately, the Ohio Supreme Court declined to remand the case on this basis, finding that "even assuming arguendo that Bethel would be entitled to a hearing on his motion for a new trial, the hearing would be an exercise in futility, because we have concluded that Bethel's *Brady* claim, which is the basis of his motion, is without merit." *Id*. at 377.

### B. The Instant Motion

Petitioner advances two reasons why this Court should stay the proceedings so he may return to state court in order to reassert the claims he raised in his second postconviction petition. First, Petitioner argues that the Ohio Supreme Court's *Bethel* decision has expanded the state court remedies available to him, by opening the door to the filing of a motion for leave to file a motion for a new trial based on the *Brady* allegations and newly discovered evidence presented in his prior successive postconviction petition. (ECF No. 226, at PAGEID # 16029.) Petitioner characterizes Criminal Rule 33 as a "more viable remedy" now that he is no longer required to

6

move for leave to file a motion for a new trial within a reasonable time after discovering the new evidence.  (*Id*. at PAGEID # 16031.)  Secondly, Petitioner claims that *Bethel* eliminated the "no reasonable juror" gatekeeping requirement contained in Section 2953.23(A)(1)(b) governing successive postconviction actions, and "in its place inserted the well-known standard for the evaluation of *Brady* claims, which is arguably a 'lower standard of proof' than the 'no reasonable juror' gatekeeping rule."  (ECF No. 228, at PAGEID # 16052.)

In response, the Warden argues that stay and abeyance is inappropriate here, because Petitioner has already exhausted the constitutional claims he seeks to reassert, and Petitioner has no unexhausted claims in his petition.  (ECF No. 227, at PAGEID # 16042.)  Respondent also argues that Petitioner does not have an available state court remedy under Criminal Rule 33, because the state courts determined in connection with the gatekeeping requirement set forth in § 2953.23(A)(1)(b) that Petitioner's *Brady* claim lacks merit.  (*Id*.)  In that vein, Respondent cites the Ohio Supreme Court's determination in *Bethel* that even if a petitioner is entitled to leave to file a motion for a new trial, remand for a hearing is not required if the hearing would be an "exercise in futility," because the *Brady* claim at issue is without merit.  (*Id*.) (citing *Bethel*, 167 Ohio St.3d at 377.)  Finally, Respondent argues that *Bethel* did not change the "no reasonable juror" requirement set forth in § 2953.23(A)(1)(b).

### C. Exhaustion and Petitioner's Prior Proceedings

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which governs federal habeas corpus petitions, requires that state prisoners exhaust all federal claims before those claims may be reviewed by district courts on habeas review.  28 U.S.C. 2254(b)(1).  This entails giving state courts "one full opportunity to resolve any constitutional issues by invoking

one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). The exhaustion requirement is satisfied once the petitioner has fairly presented all of his claims to the highest court in the state in which he was convicted, thus giving the state a full and fair opportunity to rule on those claims before the petitioner seeks relief in federal court. *Id*. at 842. Fair presentment requires the petitioner to raise the same factual and legal basis for the claim in state court that he seeks to raise in federal habeas corpus. *Gray v. Neverland,* 518 U.S. 152, 162–63 (1996); *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

Federal district courts may not adjudicate a mixed habeas petition that contains both exhausted and unexhausted claims. *Rose v. Lundy*, 455 U.S. 509, 518–19 (1982) (finding that comity requires that state courts have the first opportunity to review unexhausted claims). District courts have the discretion, however, to stay habeas proceedings and hold them in abeyance to allow a petitioner with a mixed petition to return to state court to exhaust his unexhausted claims. *Rhines v. Weber*, 544 U.S. 269, 275–76 (2005). A stay is appropriate only when the unexhausted claims are not plainly meritless, and the petitioner has shown good cause for his failure to exhaust the claims earlier. *Id.* at 277. Stay-and-abeyance is only available in limited circumstances at the discretion of the district court and must be conditioned on time limits so as not to undermine the AEDPA's objectives of streamlining habeas proceedings and encouraging finality. *Id.* at 276–78. Thus, a stay is inappropriate "if a petitioner engages in abusive litigation tactics or intentional delay." *Id.* at 278.

Here, this Court stayed these proceedings to permit Petitioner to return to state court in

8

order to litigate a successive postconviction petition asserting, in part, a *Brady* claim developed during the discovery authorized as part of these habeas corpus proceedings. The Ohio Tenth District Court of Appeals did not reach the merits of the claim. Instead, that court determined that Petitioner's clams were either barred by *res judicata* or did not meet the gatekeeping requirements of O.R.C § 2953.23(A)(1). Because the Ohio Supreme Court declined to exercise jurisdiction over Petitioner's appeal, the decision by the Court of Appeals constitutes the last reasoned state court decision addressing Petitioner's successive petition for postconviction relief. *See Hughbanks v. Hudson*, 2 F.4th 527, 535-36 (6th Cir. 2021) (citing *Barton v. Warden*, 786 F.3d 450, 462 (6th Cir. 2015) (per curiam) (holding that a state court's explicit application of a procedural rule to bar the adjudication of a claim on the merits counts as a "last reasoned opinion").

In determining that Petitioner failed to satisfy the jurisdictional requirements of O.R.C. 2953.23(A)(1), the Court of Appeals held as follows:

> D. Fourth Assignment of Error
>
> {¶ 33} In the fourth assignment of error, Conway argues that the trial court erred by dismissing the fourth ground of relief presented in his petition, in which he asserted that his due process rights under the Fourteenth Amendment were violated when the prosecution withheld information favorable to his defense. (Appellant's Brief at 21.)
>
> {¶ 34} Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985).
>
> {¶ 35} Three elements must be met to show a *Brady* violation. *Beuke v. Houk*, 537

9

F.3d 618, 633 (6th Cir.2008), citing *Strickler v. Greene*, 527 U.S. 263, 280 (1999). First, the evidence must be either exculpatory or impeaching, and therefore favorable to the accused. *Id.* Second, the prosecution must have suppressed the evidence in question, whether intentionally or not. *Id.* Third, the defendant must have suffered prejudice as a result to the suppression. *Id.*

{¶ 36} Conway identifies four categories of undisclosed information that he believes would have been favorable to his defense, each of which we consider in turn.

{¶ 37} First, Conway argues that the prosecution suppressed prior inconsistent statements of Brian McWhorter and Ronald Trent, both of whom testified against him. In his petition for relief, Conway identifies several police reports and interviews with McWhorter during which McWhorter denied seeing Conway in the parking lot of the shooting and denied seeing him with a gun. (Petition at 30-31.) Conway argues that those statements were inconsistent with McWhorter's trial testimony, during which he stated that (1) he saw Conway immediately obtain a gun from the trunk of a car after Conway's brother stated that he had just been stabbed, and (2) he saw Conway lowering his hand with a gun in it after shots were fired. (Petition at 31.)

{¶ 38} The police reports and interviews with McWhorter memorialize two initial interviews conducted with him early on January 24, 2002, during which McWhorter admitted that Conway was at the bar at the time of the shooting but denied knowing any other details. (Petition Ex. Nos. 5, 22 & 23.) A third interview occurred the same day, after McWhorter called the detectives himself and said that he wanted to tell them what really happened the night of the shooting. During the interview, McWhorter stated that on the night of the shooting, he heard Conway's brother Jeff tell Conway that he had just been stabbed, after which Conway left his view. Thereafter, McWhorter heard gunshots. He told the detectives that he did not see Conway with a gun. (Petition Ex. No. 24.)

{¶ 39} Even if these interviews were not available to Conway because the state withheld them, they do not amount to a violation under *Brady* because they are not inconsistent the statements that McWhorter made at trial. During his testimony, McWhorter stated that he had lied to the detectives during the initial two interviews because he had been "scared." (Jan. 23, 2003 Tr. Vol. X at 1759.) McWhorter was cross-examined about these interviews by Conway's attorney at trial, during which he stated that he went to the police for the third interview after being "jumped" by Conway's friends. (Tr. Vol. X at 1781.) Thus, the interview reports were consistent with McWhorter's testimony and would not have provided grounds for impeaching McWhorter. In addition, even if McWhorter's trial testimony stating that he saw Conway with a gun were inconsistent with a previous statement, such inconsistency could not have prejudiced Conway, who admitted at trial that he fired the

10

shots. *Conway II* at ¶ 19.

{¶ 40} Conway also asserts that a *Brady* violation occurred because the state withheld a letter from Ronald Trent to prosecutors in which Trent stated that he wanted to testify in exchange for a deal. (Petition at 31.) Attached to the petition is a letter from Trent to the Franklin County Prosecutor dated March 12, 2002, in which Trent states that he has "detailed information on this case" and is "willing to work out a deal with your office." (Petition Ex. No. 26.) According to Conway, this statement was inconsistent with Trent's testimony at trial, where he stated that his motivation for testifying against Conway was "because he laughed at someone else's pain from another killing." (Petition at 31; Tr. Vol. X at 1825.)

{¶ 41} The purported inconsistency cited by Conway would not have had an impeaching effect on Trent at trial. During his testimony, Trent admitted that he went to his initial meeting with the prosecutor hoping to make some kind of deal in exchange for providing information. (Tr. Vol. X at 1830.) In addition, Trent stated that he did make a deal allowing him to obtain work release while in prison in exchange for working with the Franklin County Sheriff's office to gather information. (Tr. Vol. X at 1831). Thus, the letter's contents were not inconsistent with Trent's testimony, would not have had an impeaching effect, and do not support Conway's claim of a *Brady* violation.

{¶ 42} Second, Conway argues that the state suppressed statements made by eyewitnesses that identified individuals other than Conway as the shooter. (Appellant's Brief at 22.) The statements in question were part of reports prepared by police investigators describing initial leads obtained from interviewing persons who had been at the scene of the shooting, including the surviving victim. (Petition Ex. Nos. 5, 27-38, 41-43.) Many of the witness statements do not identify the shooter by name, and many fit Conway's physical description at the time of the shooting. Conway fails to connect any of these statements to the testimony of particular witnesses whose credibility they would have impeached. Furthermore, none of these statements were exculpatory because Conway, while testifying on his own behalf, admitted to the shooting at trial. Accordingly, we reject the contention that they support his allegation of a violation under *Brady*.

{¶ 43} Third, Conway argues that a *Brady* violation resulted from the prosecution's suppression of evidence that he believes contradicted its theory of the case. (Appellant's Brief at 23.) He again mentions the witness statements, which, for the reasons just discussed, do not demonstrate a *Brady* violation. *Id.*

{¶ 44} Conway also cites to what he describes as "the statement of the security guard" in exhibit Nos. 54-56. A security guard working at an apartment complex next to the bar where the shooting occurred heard gunfire, saw people running, and saw one man get into a silver Chevrolet that he then drove onto the apartment

11

complex premises. He witnessed the car strike another car before the driver got out and ran into one of the buildings. The security guard reported the license number of the car to the police. (Petition Ex. Nos. 55-56.) The police interviewed the person to whom the car was registered, who claimed not to be at the bar that night. (Petition Ex. No. 54.) It is not clear how this report contradicts the state's theory of the case, and Conway does not elaborate on the assertion that it does. Many people were involved in the fight that immediately preceded the shooting, and it is logical that many of them would flee at the sound of shots being fired.

{¶ 45} Conway also cites to a police interview with an employee of the club named Christopher Laney. (Appellant's Brief at 24; Petition Ex. No. 60.) Laney recounts attempting to separate individuals after a physical assault that occurred inside the club, escorting the victim out, and then witnessing the melee in the parking lot. At that time, an individual who did not match Conway's description pulled what Laney believed to be a gun out of his pocket and pointed it at him. Laney then heard five or six gunshots. (Petition Ex. No. 60.) Once again, Conway does not explain how this information contradicts the state's case. Laney did not state that the man he saw fired the shots he heard. In fact, Laney's narrative suggests that the man he saw did not fire the shots because the encounter with the man holding the gun was nearly contemporaneous with the sound of gunshots and Laney did not report that the man fired the weapon. The interview is merely evidence that another individual besides Conway had a firearm that night. Finally, it must be noted once again that neither Laney's statement nor the security guard's statements exculpate Conway, who admitted to firing the shots that struck the victims.

{¶ 46} In addition, Conway also cites to exhibit No. 61 of his petition with the conclusory assertion that it contains "statements of other witnesses whose statements impeached the prosecution's case." (Appellant's Brief at 24.) The exhibit contains an interview with one witness, Michael Nolasco, conducted on January 19, 2002, who witnessed the shooting and saw the shooter flee in an SUV. It is not clear how Nolasco's statement contradicts the state's case. Troy Ankrum, a bouncer, testified at trial that the shooter and others fled in an SUV. (Tr. Vol. VIII at 1250.) Furthermore, during his testimony, Conway admitted fleeing the scene in a vehicle. (Tr. Vol. XIII at 1250.) Thus, Nolasco's statement appears consistent with the state's case.

{¶ 47} Fourth, Conway cites to the evidence discussed in the previous assignment of error pertaining to his first attorney, Christopher Cicero, and asserts that this evidence was suppressed by the state. Conway does not explain how any of the evidence concerning Cicero was impeachable or exculpatory. For the reasons previously discussed, Cicero's statements were far from exculpatory, and because the state never actually called Cicero as a witness, they could not have been used to impeach him.

12

> {¶ 48} For the foregoing reasons, the trial court did not err when it dismissed the fourth ground for relief in Conway's petition. Accordingly, the fourth assignment of error is overruled.

*State v. Conway*, No. 17AP-90, 2019 WL 480342, *7-10 (Feb. 7, 2019).

The allegations forming the basis of the *Brady* claim asserted in the Third Amended Petition as Petitioner's Eighteenth Claim for Relief are nearly identical to the allegations raised in the successive state postconviction petition. It is evident from a comparison of the two *Brady* claims that Petitioner presented both the factual and legal basis of his federal constitutional claim to the state courts. Accordingly, the Court agrees with Respondent that Petitioner's *Brady* claim is exhausted for purposes of habeas corpus review. Further, the Court finds that the Third Amended Petition does not constitute a mixed petition and therefore a stay of the proceedings is inappropriate.

The Court rejects Petitioner's argument that *Bethel* expands the scope of remedies available to him and therefore justifies a stay of these proceedings so that he may return to state court in order to litigate not only his *Brady* claim, but his trial counsel ineffectiveness claims, as well as his claims regarding Attorney Cicero's conflict of interest. *Bethel* considered when a trial court has subject matter jurisdiction to entertain a successive postconviction petition in the limited context where the state is alleged to have withheld material evidence from the accused. With respect to untimely Criminal Rule 33 motions for leave to file a motion for a new trial, *Bethel* made clear that a "reasonable time" filing requirement is not contained within that Rule. Perhaps this may present a "more viable" course of action than was previously thought available, but the hypothetical feasibility of filing such a motion does not mandate a stay of federal habeas proceedings when the essential factual and legal basis of Petitioner's claims have already been

presented to the state courts. For purposes of exhaustion, it is not necessary for Petitioner to present the same claim for relief in postconviction and a motion for leave to file a motion for a new trial, because "[w]here several alternative State remedies are available to a defendant, exhaustion of one of those alternatives on a particular issue is all that is necessary. Section 2254 does not require repetitious applications to State courts for relief." *Keener v. Ridenour*, 594 F.2d 581, 584 (6th Cir. 1979) (citing *Brown v. Allen*, 344 U.S. 443, 73 (1953)). *See also O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) (finding that "[a]lthough [the language of § 2254] could be read to effectively foreclose habeas review by requiring a state prisoner to invoke *any possible* avenue of state court review, we have never interpreted the exhaustion requirement in such a restrictive fashion" and "we have not interpreted the exhaustion doctrine to require prisoners to file repetitive petitions"); *Francisco v. Gathright*, 419 U.S. 59, 62-63 (1974) (holding that when a petitioner has previously exhausted his state remedies, the petitioner is not required to re-exhaust state remedies due to a change in state law); *Roberts v. LaVallee*, 389 U.S. 40, 42 (1967) (finding "Congress had not intended to require repetitious applications to state courts"). In sum, *Bethel* does not render Petitioner's previously exhausted claims unexhausted.

Accordingly, the Court **DENIES** Petitioner's motion to stay (ECF No. 226.) Because the Court has denied Petitioner's motion to stay the proceedings, the Court also **DENIES** the motion requesting authorization for his federal habeas counsel to represent him in state court in connection with the filing of another successive postconviction petition or a motion for leave to file a motion for a new trial. The Court **GRANTS** Petitioner's request for an extension of time to file the Traverse. The Traverse shall be filed within 30 days of the date of this Opinion and Order.

### D. Procedural Default

As an additional matter, the issue of exhaustion is separate from the issue of procedural default. In the Sixth Circuit, a district court must undertake a four-part analysis when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must decide that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id*. Second, the court must determine whether the state courts actually enforced the state procedural sanction. *Id*. Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id*. Finally, if the court has determined that a petitioner did not comply with a state procedural rule, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. *Id*.

*Bethel* arguably implicates the third prong of the *Maupin* test. The United States Supreme Court recently reiterated that "[t]his Court will not take up a question of federal law in a case 'if the decision of the state court rests on a state law ground that is *independent* of the federal question and *adequate* to support the judgement.'" *Cruz v. Arizona*, 598 U.S. ___ (2023), 2023 WL 2144416, *5 (Feb. 22, 2023) (quoting *Lee v. Kemna*, 534 U.S. 362, 375 (2002)) (emphasis in original). After *Bethel*, this Court questions whether the § 2953.23(A)(1) gatekeeping provisions governing untimely or successive postconviction petitions are independent of federal law when applied to *Brady* claims. As discussed above, the Ohio

15

Supreme Court recognized that lower courts have construed the successive postconviction statute and Criminal Rule 33 inconsistently or incorrectly as applied to *Brady* claims. The Ohio Supreme Court determined that the question of whether Bethel could satisfy the "no reasonable fact-finder" prong of § 2953.23(A)(1)(b) "goes to the heart of *Brady*'s third prong . . . ." *Id.* (quoting *Kyles v. Whitley*, 514 U.S. 419, 433 (1995)). By interpreting O.R.C. § 2953.23 coextensively with *Brady*, the state procedural rule appears to rely on and be inextricably interwoven with federal law. *See Ake v. Oklahoma*, 470 U.S. 68, 75 (1985) (when resolution of the state procedural law question depends on a federal constitutional ruling, the state law prong of the court's holding is not independent of federal law and jurisdiction is not precluded).

The Court notes, however, that even if the state rule of procedure is an adequate and independent basis to enforce procedural default, this Court must necessarily still review the merits of Petitioner's *Brady* claim without the limitations imposed by 28 U.S.C. § 2254(d), in order to determine whether cause and prejudice exists to excuse any default. *See Strickler v. Greene*, 527 U.S. 263 (1999). *See also Hughbanks v. Hudson*, 2 F.4th 527, 535-36 (6th Cir. 2021) (reiterating that *de novo* review of a procedurally defaulted *Brady* claim is necessary in order to determine whether cause and prejudice exist to excuse the default and noting "if Hughbanks can demonstrate a meritorious *Brady* violation, he will have also made the requisite showing of cause and prejudice, allowing us to grant habeas relief.")

III.    CONCLUSION

For the foregoing reasons, the Court hereby **DENIES** Petitioner's motion to stay and to authorize his habeas counsel to represent him in connection with state court successive postconviction proceedings. (ECF No. 226.) The Court **GRANTS** Petitioner's request for an

16

extension of time to file the Traverse.  The Traverse shall be filed within 30 days of the date of this Opinion and Order.

    **IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED:  March 15, 2023**